PERCY L. JAMES v. CAROLINA COACH COMPANY.

(Filed 27 February, 1935.)

1. **Trial D a—On motion of nonsuit all the evidence is to be considered in the light most favorable to plaintiff.**

   On a motion as of nonsuit all the evidence, whether offered by plaintiff or elicited from defendant's witnesses, is to be considered in the light most favorable to plaintiff, and he is entitled to every reasonable intendment thereon and every reasonable inference therefrom. C. S., 567.

2. **Automobiles C m—Evidence held sufficient to overrule motion of nonsuit in this action for personal injuries sustained in auto collision.**

   The evidence in this case, considered in the light most favorable to plaintiff, tended to show that plaintiff was driving his coupe well on the right side of a highway within the corporate limits of a city, that another adult and four children were riding in the coupe, that plaintiff's left arm was hanging outside the car, and that defendant's bus, driven at an excessive speed, approached from the opposite direction in the middle of the highway, that the bus had just passed another car going in the same direction and was being driven back to the bus driver's right of the highway, that as the driver turned the bus to the right the back of the bus swung over the middle of the highway and hit plaintiff's arm and the back of his car, causing the injury in suit: *Held*, defendant's motion as of nonsuit, based upon plaintiff's failure to slacken his speed, was properly refused, plaintiff having the right to assume that the approaching bus would be driven to its right side of the road so that the bus and car could pass each other in safety. N. C. Code, 2621 (53).

3. **Automobiles C g—Violation of statutory speed limit is negligence per se and not merely evidence of negligence.**

   The violation of the statutory speed limit is negligence *per se*, and an instruction that it is only evidence of negligence entitles defendant to a new trial on its exception based upon plaintiff's contributory negligence in exceeding the speed limit, but such violation must be a proximate cause of the injury in suit in order to constitute a defense to the action.

APPEAL by defendant from *Shaw, J.*, and a jury, at April Term, 1934, of DURHAM. New trial.

This is an action for actionable negligence brought by plaintiff against the defendant. The defendant denied the material allegations of the complaint and set up the plea of contributory negligence. The issues submitted to the jury and their answers thereto are as follows: "(1) Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? A. 'Yes.' (2) Was the plaintiff guilty of contributory negligence, as alleged by the defendant? A. 'No.' (3) What amount of damages, if any, is the plaintiff entitled to recover? A. '$12,500.' "

The court below rendered judgment on the verdict. The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court. The material ones will be set forth in the opinion.

*Bryant & Jones for plaintiff.*
*Smith, Leach & Anderson and Hedrick & Hall for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendant made motions in the court below for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions, and in this we can see no error.

It is the settled rule of practice and the accepted position in this jurisdiction that on a motion to nonsuit the evidence which makes for the plaintiff's claim, and which tends to support his cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.

In *Moseley v. R. R.,* 197 N. C., 628 (635-6), it is said: "A serious and troublesome question is continually arising as to how far a court will declare certain conduct of a defendant negligence and certain conduct of a plaintiff contributory negligence, and take away the question of negligence and contributory negligence from the jury. The right of trial by jury should be carefully preserved, and if there is any evidence, more than a scintilla, it is a matter for the jury and not the court."

Taking the evidence in the light most favorable for plaintiff, and with the reasonable inference to be drawn therefrom, we think the evidence sufficient to have been submitted to the jury. The evidence on the part of the plaintiff was to the effect: That plaintiff and his neighbor, Ralph L. Evans, were taking their "kids" to the circus, on 2 August, 1932. The plaintiff was driving a '29 Model Pontiac Coupe. Evans had three children and plaintiff one. Plaintiff's and one of Evans' were about two years old, and the other two were about four and six years old. Plaintiff was driving on Hillsboro Road, in West Durham, in a westerly direction. Traffic was heavy. · 15th and 16th streets run into Hillsboro Road at an angle, but they do not cross it. Plaintiff was driving his car on the north side of the Hillsboro Road on the right-hand side, about three feet from the curb. He had gotten beyond the curve and the road was straight. The road was thirty feet wide where the collision took place. Plaintiff's car was between 5½ and 6 feet wide. Half of the street would be 15 feet. On the opposite side of the road was Garrad's Store and a barber shop. Cars were parked next to the barber shop. Plaintiff was driving between 20 and

25 miles an hour. He had his left arm out to give traffic signals. Plaintiff testified: "Two of Mr. Evans' children were standing down to the foot of the car, in front of his feet, between his feet and the dash board. And he had the other one in his lap. I think he had the baby one in his lap. I didn't have a kid in my lap at all. With all those children in the car with me and Mr. Evans, I could have driven the car with both hands in a normal way. I don't think it was more convenient for me to drive along there with my arm hanging out the window. I can drive a car pretty good with one hand. . . . Q. You saw that car driving along in the middle of the road for a distance of more than 100 feet coming straight toward you, didn't you? A. Yes, sir. Q. Why didn't you slow down your automobile? A. Well, I thought he was going to get back on his side of the road. . . . I could have run out through the field if I knew the bus was going to hit me. Q. If you had applied your brakes and driven with reference to the conditions that existed in front of you, you would have never collided with the bus, would you? A. Yes, if I had set where the car was and applied my brakes and stayed right where the car was at, he would have hit me. . . . A. Well, I was already a way over on my side of the street, not farther than three feet from the curb. The bus was coming, and there was no reason why he couldn't get back on his side of the road. I thought he was going to until it was too late; after he had done hit me, it was too late then. There was not any reason why he couldn't pull back on his side of the road. I expected him to."

R. L. Lake was driving defendant's bus, headed toward Durham, in an easterly direction, going at least 40 miles an hour. The bus passed around the car of Mrs. H. W. Knight and two parked cars on the south side of the street, about 50 feet west of where the collision occurred, and traveling in the center of the highway and on plaintiff's side of the road.

Plaintiff testified: "When he got right there, right at the curve, he was trying to cut the bus back, he was already over on my side of the road. That pushed the back end of the bus around; when he cut it back around, the back end of it come around, and the very back of it crashed right by my car and hit the front of the car just a little bit, hooked up the front fender just a little, and then it got my elbow. I had my arm hanging out the door, like that, and it caught my elbow there between the two cars and mashed that all to pieces, and tore my running board and fender all to pieces. It hit the back of the car more than it did the front of it."

The collision took place about 2 o'clock in the day in the residential section of the city of Durham. The bus was about 30 feet long and 86 inches wide. The testimony of Mrs. H. W. Knight was to the effect

that she had taken her boys to the circus grounds and was returning, going back to Durham in an easterly direction, on Hillsboro Road. "He (speaking of Lake) kept on blowing, and I kind of switched over to one side and gave him a chance to go by, and he swung around me. . . . Bus was going forty miles an hour. . . . When he went around me that throwed him over on the left-hand side of the street. He had not had time with the rate we were going to get back on his side of the highway and to avoid hitting these cars. I saw the collision between Mr. James' automobile and the bus. Mr. James' car was well over on his side, on the right-hand side of the street at the time of the collision. I would say the rear end of the bus was at least four feet over the center of the highway leading back, with the front end of the bus coming back over to his right, to the bus driver's right." There was other evidence on the part of plaintiff to like effect.

In *Shirley v. Ayers*, 201 N. C., 51 (53-4), it is said: "The rule to be observed by the driver of an automobile, when he approaches another automobile, coming from the opposite direction, on a public highway in this State, in order that the automobiles may pass each other in safety, is prescribed by statute, section 10, chapter 148, Public Laws 1927, N. C. Code 1927, sec. 2621 (53). The rule is as follows: 'Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half of the main traveled portion of the roadway as nearly as possible.'

"The driver of each automobile, who is himself observing the rule, has the right, ordinarily, to assume that the driver of the other automobile will also observe the rule, and thus avoid a collision between the two automobiles when they meet each other. Neither is under a duty to the other to anticipate a violation of the rule by him. When the driver of one of the automobiles is not observing the rule, as the automobiles approach each other, the other may assume that before the automobiles meet the driver of the approaching automobile will turn to his right, so that the two automobiles may pass each other in safety. 'One is not under a duty of anticipating negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, a person is entitled to assume, and to act on the assumption, that others will exercise ordinary care for their own safety.' 45 C. J., 705." *Cory v. Cory*, 205 N. C., 205.

The defendant contends: The court erred in charging the jury that exceeding the speed limit prescribed by statute is merely evidence from which the jury may find that a party is negligent, rather than that exceeding the statutory speed limit is negligence *per se*.

"In *Hendrix v. R. R.*, 198 N. C., 142 (144), is the following: 'It is well settled in this jurisdiction that the violation of a town or city ordi-

nance, or State statute, is negligence *per se,* but the violation must be the proximate cause of the injury. Ordinarily this is a question for the jury, if there is any evidence, but, if there is no evidence that the violation of the ordinance or statute is the proximate cause of the injury, this is for the court to determine.' There must be a causal connection between the violation of the statute and the injury inflicted. *Burke v. Coach Co.,* 198 N. C., 8 (13)." *Jones v. Bagwell, ante,* 378 (382). We think the contention of defendant must be sustained.

In *Taylor v. Stewart,* 172 N. C., 203 (204-5), speaking to the subject, is the following: "His Honor charged the jury that under the laws of North Carolina it was a misdemeanor for a person under the age of 16 to drive an automobile upon any highway or public street, and that it is a circumstance from which the jury may infer negligence, and that it does not necessarily follow that the jury shall conclude it was negligence, but that it is a circumstance to go to the jury. In this his Honor erred. He should have instructed the jury that it is negligence *per se* for the defendant James Stewart to have driven the machine in violation of the statute law of the State. *Zogier v. Southern Express Co.,* 89 S. E., 44; *Paul v. R. R.,* 170 N. C., 231; *Ledbetter v. English,* 166 N. C., 125. It does not follow, however, that the defendant is liable in damages, for the plaintiff must go further and satisfy the jury by a preponderance of the evidence of the fact that such negligence was the proximate cause of the death of the child." *Ledbetter v. English,* 166 N. C., 125; *Graham v. City of Charlotte,* 186 N. C., 649 (666); *Godfrey v. Coach Co.,* 201 N. C., 264 (267); *Norfleet v. Hall,* 204 N. C., 573 (577); *Jones v. Bagwell, ante, supra.*

We are not unmindful of the language used in N. C. Code 1931 (Michie), sec. 2621 (46), subsec. (6).

For the reasons given, there must be a

New trial.