HYLTON K. CROTTS v. OVERNITE TRANSPORTATION COMPANY AND EARL T. WILLIAMS.

(Filed 7 June, 1957.)

**1. Negligence § 19c—**

In passing upon the question of nonsuit on the ground of contributory negligence, the evidence must be considered in the light most favorable to plaintiff, giving him the benefit of all the inferences to be reasonably drawn therefrom and drawing no inference adverse to him not reasonably necessary from the evidence.

**2. Automobiles § 7—**

A motorist is required to act as a reasonably prudent man and to drive with due caution and circumspection and at a speed or in a manner so as not to endanger or be likely to endanger any person or property, G.S. 20-140, G.S. 20-141, and his failure to do so is negligence.

**3. Automobiles § 8—**

A motorist is required by statute to remain on the right side of the highway at a crossing or intersection, G.S. 20-147, and the violation of this statute is negligence.

**4. Automobiles § 18—**

G.S. 20-150(c) prohibits a motorist from overtaking and passing at highway intersections, and the violation of this statute is negligence.

**5. Automobiles § 14—**

A motorist is prohibited from following another vehicle more closely than is reasonable and prudent under the circumstances with regard to the

traffic and condition of the highway, G.S. 20-152, and the violation of this statute is negligence.

**6. Same—**

The condition and effectiveness of his brakes must be taken into consideration by a motorist in determining what is a safe distance and a safe speed at which he may follow another vehicle.

**7. Automobiles § 41d—Evidence held to show contributory negligence as matter of law in failing to keep proper lookout or in following vehicle too closely.**

The evidence tended to show that plaintiff was following a tractor-trailer on the highway, that as they approached an intersection the tractor-trailer twice decreased speed, that plaintiff, upon apprehending this, also decreased speed, but that he permitted the distance between the vehicles to lessen, and that as the tractor-trailer entered the intersection it slowed down suddenly and started turning left, and that plaintiff, traveling some 30 to 35 miles per hour, also pulled to the left, applied his brakes and then attempted to clear the tractor-trailer to the right, but struck the right rear of the tractor-trailer with the left front of his car. *Held:* The evidence discloses that plaintiff was either following the tractor-trailer too closely or was not keeping a proper lookout, and that his negligence in regard thereto was a proximate cause of the collision, so that judgment of nonsuit on the ground of contributory negligence was proper.

HIGGINS, J., dissenting.
JOHNSON, J., concurs in dissent.

APPEAL by plaintiff from *Craven, J.,* December 1956 Term of FORSYTH.

Plaintiff seeks compensation for personal injuries and property damage resulting from a collision between an automobile owned and operated by plaintiff and a tractor-trailer owned by the corporate defendant and driven by the individual defendant. The pleadings raise issues of negligence and contributory negligence. At the conclusion of plaintiff's evidence, defendants moved for nonsuit. The motions were allowed. Judgment was entered dismissing the action and plaintiff appealed.

*Ingle, Rucker & Ingle, Womble, Carlyle, Sandridge & Rice, and Ratcliff, Vaughn, Hudson, Ferrell & Carter for plaintiff appellant.*
*Deal, Hutchins & Minor for defendant appellees.*

RODMAN, J. The correctness of the judgment rests on the answer given to the question: Does the evidence establish that a proximate cause of plaintiff's injuries was his own negligence?

The question is answered by reviewing the evidence in the light most favorable to plaintiff, giving to him the benefit of all the inferences to be reasonably drawn therefrom and drawing no inference adverse to

him not reasonably necessary from the evidence. When so viewed, the evidence establishes these facts:

The collision occurred around 3:00 p.m., 12 February 1952, on Highway 54, just outside of Burlington. The highway is straight for considerable distance as it approaches Burlington from the west. The highway is paved to a width of eighteen feet. On each side of the pavement is a dirt shoulder six feet wide. Tucker Street intersects the highway. The intersection is indicated by highway signs 100 yards west of the intersection. Tucker Street lies in a north-south direction. On the north side of the highway and in the center of Tucker Street is a concrete "island" dividing Tucker Street into its eastern and western halves at the intersection. On the island is a highway traffic sign directing traffic coming from Tucker Street to stop before entering the highway. West of Tucker Street is a ravine over which the highway passes by bridge without rails. The drop from the highway to the ravine is about twelve feet. The tractor-trailer is forty feet long.

The tractor-trailer was approaching Burlington from the west. Plaintiff was likewise traveling in an eastwardly direction. When half a mile west of the intersection, plaintiff observed the tractor-trailer. It was at that time 500 to 600 feet ahead of him. Plaintiff's speed at that time was 50 to 55 m.p.h., and the speed of the tractor-trailer was 40 to 45 m.p.h., "nearer 40 miles." When the tractor-trailer was 300 feet west of the intersection, plaintiff had lessened the distance separating the vehicles to 125 feet. The vehicles had at that time reduced their speed to 35 to 40 m.p.h. When the tractor was 150 feet from the intersection, plaintiff noticed that the distance separating the vehicles was decreasing. He testified: "There was nothing to indicate the truck was slowing down except that I closed in a little bit. I did not see any light, there was no light burning, but I could see the intersection and I assumed he was slowing a little at that time for the intersection, and I slowed a little at that time also to maintain my distance. As he approached the intersection, within about 20 feet of the intersection, I noticed that I was gaining again on him rather suddenly without increasing my speed. Almost within the next second, I noticed that he started turning abruptly to the left, and he slowed down suddenly just as if something had grabbed the truck and started cutting right across.

"As the truck turned abruptly to the left, I pulled over to the left a little, across the center line, because he scared me over to the left. . . . I was traveling between 35 and 40 miles per hour and was approximately 110 to 115 feet behind the tractor-trailer when I pulled over to the left a little bit. The second time I was approximately 100 feet behind him and was traveling between 30 and 35 miles per hour when I closed in a little bit and realized he was slowing down suddenly. That is when he made an abrupt left turn and I started to turn with him.

"The brakes on my car were good. At 30 to 35 miles per hour it ordinarily takes 80 feet to stop my car. In this particular instance, I did not have enough room either to stop or slow down. As he made his turn, I was 100 to 125 feet back, and then it took me a little while to slow up because it was down to where I was approximately 75 feet when I realized that the truck, the cab had gotten over to that point where it greatly alarmed me. Part of his truck was crosswise the street and I could see which way he was heading. . . . I moved as he did to the left. I feared I would run into him if I had gone straight on behind him. My movement was to avoid a wreck that way. If I had put on my brakes fully, I would have thrown my wife into the windshield and done great damage to her. After she had had a chance to get alerted and I saw no avenue of escape on the left side, that is when I put them on, about 75 feet, and turned to the right, giving the truck, I hoped, time enough to move out of my way so that there wouldn't be a wreck." Plaintiff then pulled to the right and attempted to go on the right-hand side of the highway and to the rear of the tractor-trailer. The left side of plaintiff's automobile collided with the right rear of the tractor-trailer, resulting in serious damage to plaintiff and his automobile.

This is the factual background to which must be applied the rule requiring a motorist to act as a reasonably prudent man. That plaintiff did not so act is, we think, apparent. "The hub of our motor vehicle traffic regulations is contained in G.S. 20-140, 141." *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676. Each of these statutes provides a penalty for the motorist who drives "without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property." G.S. 20-147 commands a motorist to remain on the right side of the highway when crossing an intersection, and G.S. 20-150 (c) prohibits a motorist from overtaking and passing at highway intersections. G.S. 20-152 is a statutory declaration of the common law that "The driver of a motor vehicle shall not follow another motor vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon the condition of the highway."

A violation of any of these statutes constitutes negligence. *Lutz Industries v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333; *Morgan v. Coach Co.*, 225 N.C. 668, 36 S.E. 2d 263; *Tarrant v. Bottling Co.*, 221 N.C. 390, 20 S.E. 2d 565; *James v. Coach Co.*, 207 N.C. 742, 178 S.E. 607.

If a vehicle is equipped with four wheel brakes, it should stop in 25 feet when traveling at 20 m.p.h., and when equipped with two wheel brakes, in 45 feet at that speed. G.S. 20-124 (c). The evidence does not disclose whether plaintiff's car was equipped with two or four wheel brakes, but the braking equipment of plaintiff's car was a factor which

he was required to take into consideration in determining what was a safe distance and a safe speed at which he could follow defendant's vehicle. Plaintiff knew he was approaching a highway intersection, and the vehicle ahead might be forced by other traffic to stop, or it might make a right or left turn. He knew that the speed of defendant's vehicle had been twice reduced and the distance separating them twice shortened by the reduction in the speed of the vehicle ahead. Plaintiff apparently only became aware of these facts by noting the shortening of the distance. Defendant's reduction in speed should have alerted plaintiff to the probability of further changes in the movement of defendant's vehicle. He knew that it normally required 80 feet to stop his vehicle at a speed of 30 to 35 m.p.h., and yet he permitted the distance to be reduced to "approximately 75 feet when I realized that the truck, the cab had gotten over to that point where it greatly alarmed me." It was necessary to alert his wife before he could fully apply his brakes.

It is manifest that he was either following too closely or was not keeping a proper lookout. Neither is the conduct of the reasonably prudent man. There can be no reasonable doubt that this negligent conduct of the plaintiff was at least one of the proximate causes of the collision. The judgment is in accord with our decisions in similar factual situations. *Sheldon v. Childers,* 240 N.C. 449, 82 S.E. 2d 396; *Cozart v. Hudson,* 239 N.C. 279, 78 S.E. 2d 881; *Lyerly v. Griffin,* 237 N.C. 686, 75 S.E. 2d 730; *Fawley v. Bobo,* 231 N.C. 203, 56 S.E. 2d 419; *Moore v. Boone,* 231 N.C. 494, 57 S.E. 2d 783; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Austin v. Overton,* 222 N.C. 89, 21 S.E. 2d 887; *Tarrant v. Bottling Co., supra; Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326. The judgment is

Affirmed.

HIGGINS, J., dissenting: I think the evidence warrants the inference that the defendant's truck was in the act of turning to the left of the center of the intersection at the time of the accident. The plaintiff had a right to assume and to act on the assumption the driver would obey the law and make the turn to the right of the center; and if he had done so, the plaintiff may have had sufficient time to avoid the accident. It is my view that the issues of negligence and contributory negligence should have been submitted to the jury.

I vote to reverse.

JOHNSON, J., concurs in dissent.