CECIL NORMAN SMITH v. CITY OF KINSTON, NORTH CAROLINA, A MUNICIPAL CORPORATION.

(Filed 19 November, 1958.)

**1. Negligence § 11—**

In order to bar recovery it is not necessary that contributory negligence be the sole proximate cause of the injury, but it is sufficient for this purpose if it is one of the proximate causes thereof.

**2. Evidence § 3—**

The courts will take judicial notice, as facts within common knowledge, of the characteristics of a hurricane and that a particular hurricane passing through the State was of great intensity, wreaking destruction in the area through which it passed.

**3. Municipal Corporations § 14a— Evidence held to disclose contributory negligence as matter of law on part of motorist hitting tree lying in the street.**

Evidence tending to show that plaintiff knew that a violent hurricane had passed through the area less than three days previously, that plaintiff was traveling along a street with his lights on dim shortly before day, and ran into a limb protruding from a large tree lying in the street, and that there was no other traffic or obstructions to plaintiff's view, *is held* to disclose contributory negligence barring recovery as a matter of law even if it be conceded that the municipality was negligent in having its agents saw off the top of the tree and smaller limbs for the

purpose of opening up a lane of traffic, leaving the pointed limb about three feet from the ground in the street.

**4. Automobiles § 7—**

Even in the absence of statutory requirement, a motorist must exercise the care of an ordinarily prudent person under like circumstances to avoid injury, and in the exercise of such care, to keep a reasonably careful lookout and keep his vehicle under proper control.

Parker, J., not sitting.

Appeal by plaintiff from *Bundy, J.*, at February 1958 Term of Lenoir.

Civil action to recover for alleged personal injury "solely and proximately caused by the actionable negligence of defendant as alleged in his complaint."

Defendant, answering the complaint, denies that it was negligent in any respect alleged, and it pleads as contributory negligence the conduct of plaintiff under the existing circumstances in bar of plaintiff's right to recover in this action.

These matters appear of record to be uncontroverted:

1. The city of Kinston, North Carolina, is now, and was at the times mentioned herein "a municipal corporation duly created, chartered, organized and existing under and by virtue of the laws of the State of North Carolina, with such powers and duties as are conferred by law."

2. "In the exercise of the authority conferred upon it as a municipal corporation under its charter and pursuant to the provisions of law pertaining to municipal corporations generally in this State," the city of Kinston "maintains streets and sidewalks within its corporate limits and that it has authority over and control and supervision of such streets and sidewalks in the manner and to the extent as authorized and provided by law."

3. "Shine Street is one of the streets of the city of Kinston and the right of control and supervision of said street by said city and the duties of the city in respect to its maintenance are such as are imposed by law."

4. "On the 15th day of October, 1954, winds of hurricane strength and velocity occurred in and around the streets of Kinston, and in fact all over eastern North Carolina as well as along the Atlantic Seaboard, it being a hurricane designated by the United States Weather Bureau as Hurricane Hazel."

5. "Shine Street is one of the streets of defendant city, running approximately east and west, and one of the trees blown down by said hurricane had set in or near the south edge of Shine Street just west of its intersection with Tiffany Street, and this tree had blown in

such manner as to reach entirely across the vehicular portion of Shine Street so as to fall and lie in a northwestern direction from its base, completely blocking the street as to vehicular traffic." And "as soon as reasonable thereafter and prior to the time complained of, defendant's employees had with axes and saws cut away a sufficient portion of said tree so as to open approximately one-third of the vehicular portion of said street."

6. And "On the 18th day of October, 1954, sometime shortly after 6 o'clock A. M., plaintiff was driving his wife's 1954 Ford automobile eastwardly along the south side of East Shine Street and was approaching the intersection of Shine Street and Tiffany Avenue."

7. And "after traversing the intersection of Shine Street and Davis Street, an automobile so driven and operated by the plaintiff, as aforesaid, collided with 'the' tree which had been blown down by Hurricane Hazel, and was lying on the south side of Shine Street," and "a limb of said tree penetrated the front of said automobile, and emerged through its left front door" * * * as a result of which "plaintiff received some injury."

And upon the trial in Superior Court plaintiff offered in evidence portions of the pleadings tending to show the above matters.

Moreover, plaintiff also alleges in his complaint "that the defendant City of Kinston knew or, by the exercise of reasonable care, should have known that the said Shine Street was obstructed as aforesaid, but notwithstanding the city of Kinston was negligent in the following particulars and respects:

"(a) That the defendant carelessly and negligently failed to remove or cause to be removed from said Shine Street the obstruction to travel along the southern portion of said street;

"(b) That the defendant negligently failed to maintain lights or other warning devices to indicate to persons using Shine Street that said street was obstructed and negligently failed to take any action to prevent injury to motorist using that street under said condition;

"(c) That the defendant carelessly and negligently permitted said street to remain obstructed contrary to the laws of the State of North Carolina and particularly G.S. 160-54."

Defendant, for further defense, avers: That the injuries of which plaintiff complains "were solely and proximately caused by the careless, negligent and unlawful conduct of * * * himself in that at said time and place, he," among other things,

"(a) was driving a motor vehicle upon a public highway carelessly and heedlessly, in willful and wanton disregard of the rights and safety of others, and with reckless disregard for his own safety, and without due caution and circumspection and at a speed and in a

manner so as to be likely to endanger persons and property, and par-
ticularly his own person and property;

"(b) Was operating a motor vehicle upon a public highway while
under the influence of intoxicating liquor;

"(c) Was operating a motor vehicle upon a public highway in a
residential district at a rate of speed in excess of 35 miles an hour;

"(d) Was operating a motor vehicle upon a public highway at a
speed greater than was reasonable and prudent in the circumstances
in that he knew, or by the exercise of reasonable diligence, would
have known that as a result of Hurricane Hazel an unprecedented
and unavoidable condition had existed and was then existing in Kin-
ston and that such a condition as did exist at the time and place com-
plained of was likely to be found on almost any street in the city
outside the business district; and

"(e) Was operating a motor vehicle upon a public highway at a
speed greater than that at which he could stop within the radius of
his headlights, assuming, though not admitting, light and atmospheric
conditions at the time and place complained of to be as alleged by
plaintiff."

And also upon the trial in Superior Court plaintiff offered his own
testimony and that of others substantially as follows:

Plaintiff testified in pertinent part: " * * * I reside at Grifton,
Route 2.* * * the accident. The night before it happened I was out
with some friends until 11:00 or 11:30, and went home; got up about
5 or a little after to pick up my brother-in-law to go squirrel hunting
before we went to work, and I was going down Shine Street when
this happened, roughly about 5:30 or 6 o'clock. As to the condition
of light, it wasn't dark; it wasn't day. The condition of the automobile
was good. the lights were on with the headlights on dim.

"I was operating the car not over 30 miles per hour down Shine
Street * * * somewhere near 30 * * * When I realized it, I had hit
something, something came through the car * * * I did not see the
tree or any portion of it before it struck my car. I was going east * * *
The accident occurred Monday morning, the 18th of October, 1954.
The hurricane occurred October 15 * * * preceding the date of the
accident.   .

"The tree that I say I struck was on the portion of Shine Street
about two-thirds of the way down the last block of Shine Street; it
is a dead end there going west. The buildings on that entire block
* * * are used for residences. There might be one little store on the
end. * * * At the end of the block where this tree was located * * *
Shine Street comes to a dead end * * * the limb * *.* it was 8 or
10 inches, roughly guessing, stuck right through the right headlight,

through the motor, through the steering gear, struck my knee and out the door * * * As I went down Shine Street toward the place where the accident occurred, I did not see any lights or warning devices of any kind. There weren't any. There were no barriers erected of any kind * * * I did not see the limb going through the car until it was in there * * * I don't remember any other limbs protruding westwardly."

Then under cross-examination plaintiff continued in pertinent part: " * * * I entered Shine Street at Main, that is Queen Street out here. * * * It is * * * nearly a quarter of a mile from Queen Street to where this tree was * * * I went up that street traveling with my dimmer-lights on. I didn't see a thing until I ran into the limb of that tree. I did not know the tree was there until I hit it * * * I never saw a thing until I hit it * * * I did not have any drinks that morning * * * At the time of the accident I was not under the influence of alcohol * * * "

  T. R. Jones testified in pertinent part: "I live at 511 E. Shine Street. My house is on the last block. I recall Hurricane Hazel that went through there, and I recall the accident that has been referred to in the testimony * * * My house is about 200 yards from the tree that was blown down. * * * I recall seeing the tree immediately after it was blown down; it went straight across the street at sort of an angle up Shine Street and they cut the top out so they could pass on the left, and on the side we live on they had the limbs cut pointing in this direction, toward Queen Street. They would cut off part of the limb and leave a naked limb 40 or 50 feet long from the trunk of the tree. This tree was like that before the accident. I saw the tree like that the day before; it was like that when I left and went to work early that morning before * * * It seems like before I went to work they had just cut the tops out. With regard to Hurricane Hazel it was the next day, I think I saw any cutting on the tree. The big limb that I referred to was cut at that time * * * ."

And the witness Jones continued: " * * * I did not see the accident. I was up in the yard * * * I saw the car when it passed my house * * * In my opinion it was going about 30 miles per hour * * * I did not hear any brakes squeal, I just heard it slam * * * It was dark; It wasn't day. When the car went by, I saw that the lights of it were on. It was being operated on the right-hand side of the road * * * right straight along the right-hand side * * * The color of the street * * * was kind of dark, damp, just like the tree and the warehouse * * * Going back to Hurricane Hazel * * * we didn't get lights ourselves for three days." And in response to the question: "Were any smudge pots or things of that kind put up?", the witness continued:

"It was after the accident. I did not see any before the accident. I did not see any warning benches put out in the road until the time of the accident * * * The trunk of the tree that blew down was pretty large— I reckon about two feet through the bottom."

Then the witness continued: "When the tree fell or blew down it was pointed back up sort of toward Queen Street * * * Relating to the ground * * * the trunk of the tree was up 3 or 4 feet from the pavement. The limb * * * was just cleaned; they cut the branches off. It was kind of sharp at the end, sticking out that angle * * * There were small branches along that limb prior to the accident and they had been trimmed off * * * There were no other limbs out there the length of that large limb. They weren't as long as that * * * There were no others extending down the street like it did."

Then on cross-examination the witness Jones continued: " * * * He had plenty of room to go around it. I came around it there that day * * * I don't know there were many trees down all over the city, and that the City had Barrus Construction Company and the Telephone people removing trees day and night. I guess they did * * * Electric lights were out on the street we lived on * * * for three or four days * * * I do. 't know who trimmed the trees out in front so people could get by. I ...idn't do it * * * The limb that I referred to had been cut off right sharp at the end, the top cut off."

The witness Wilbur Nathaniel Croom, Sr., testified: "I live at 505 E. Shine Street, that is, the last block on the street * * * I saw the tree when it first fell down * * * From the time the tree blew down until Mr. Smith's car struck it, there were no lights or flares in the street * * * ."

Then under cross-examination the witness was asked this question: "Q. There wasn't anything to keep anybody from seeing a tree in the street if they had on their automobile lights?", to which he replied: "A. It depends on what it takes to keep a person from seeing it. There wasn't anything between the driver of the automobile and the tree that I can recall; nothing to obstruct his view * * * ."

And John Henry Daughety testified: "I live at 525 E. Shine Street * * * My house is located at the corner of Shine and Tiffany * * * I recall Hurricane Hazel * * * On the second day after Hurricane Hazel there was some cutting done on the tree * * * before the accident. It was trimmed up * * * I passed there every day * * * I saw the automobile right after the accident and the limb of the tree that it struck * * * With respect to the tree and the heavier portions of the tree and the pavement the color was dark gray * * * about the color of the tree, streets and everything mostly the same * * * At that time * * * I had been going all the way up and down Shine Street, before

the accident. Q. "Were any other trees blown down in that Street?" A. "I think one more small one between Davis and Queen, but it didn't interfere with traffic much, I don't think."

And on cross-examination the witness said: "I don't know of a single thing in the world between Mr. Smith and that tree from the time he turned the corner at Queen Street until he ran into it. Some leaves were kind of yellow-brown, some of them shedded off * * *."

At the close of plaintiff's evidence, defendant moved for judgment of nonsuit. Motion was allowed and plaintiff excepted, and from the judgment appeals to the Supreme Court and assigns error.

*Wallace & Wallace, William F. Simpson for plaintiff, appellant.*
*Sutton & Greene for defendant, appellee.*

WINBORNE, C. J. Passing without deciding the question as to whether defendant was negligent as alleged in the complaint, it is manifest from the evidence that plaintiff failed to exercise due care at the time and under the circumstances of his injury, and that such failure on his part contributed to, and was a proximate cause of his injury and damage. It need not be the sole proximate cause. It is sufficient to defeat recovery if plaintiff's negligence is one of the proximate causes of the injury. *Moore v. Boone,* 231 N.C. 494, 57 S.E. 2d 783, and many other cases.

A hurricane is defined as a storm of great violence or intensity, of which the particular characteristic is the high velocity of the wind. A hurricane is properly a circular storm in the nature of a cyclone. Black's Law Dictionary.

And it is a matter of general knowledge that "Hurricane Hazel" was of great and violent proportions, wreaking destruction upon buildings, houses, and trees throughout the area in which it occurred as hereinabove related. This is a fact of which the Court may properly take judicial notice.

"Courts take judicial notice of subjects and facts of common and general knowledge." See *Dowdy v. R.R.,* 237 N.C. 519, 75 S.E. 2d 639, and cases cited.

In this connection the evidence in case in hand shows that plaintiff resided at Grifton, which is in North Carolina, eleven miles from the city of Kinston. And the evidence is that he was out with friends on the night before the accident. Hence it may be fairly inferred that he knew of the hurricane and of the devastation wrought by it. And with this knowledge at the time of the accident in question, he was driving his automobile at thirty miles per hour with lights dimmed to such an extent that he did not see an obstruction of the size of a tree two feet in diameter at the trunk in the street on his line of

travel, when his evidence shows there was nothing to prevent him from seeing. Moreover it appears that the lights of the city which had been put out of commission by the hurricane had not been restored to service. Indeed, there was no other traffic on the street.

Under these extraordinary circumstances, the evidence offered by plaintiff clearly shows that he was not exercising proper care for his own safety.

And it is a general rule of law, even in the absence of statutory requirement, that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. In the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep a reasonably careful lookout and to keep same under proper control. *Marshall v. R.R.*, 233 N.C. 38, 62 S.E. 2d 489. See also *Pike v. Seymour*, 222 N.C. 42, 21 S.E. 2d 884 in respect to the statute G.S. 20-129 and G.S. 20-131, pertaining to requirements as to headlights.

For reasons stated the judgment as of nonsuit entered below is Affirmed.

PARKER, J., not sitting.