D. J. BLACK, T/A D. J. BLACK MOTOR EXPRESS v.
GURLEY MILLING CO., INC., AND J. T. MEDLIN.

(Filed 10 October 1962)

1. **Automobiles §§ 35, 42e—**

Where defendants fail to allege that plaintiff's truck driver was following a preceding truck at a distance of less than 300 feet, defendants may not rely upon a violation by plaintiff's driver of G.S. 20-152(b) as the basis for contributory negligence, nevertheless, defendants having alleged that plaintiff's driver was not exercising due care and was operating his vehicle at a speed greater than reasonable and prudent under the circumstances then existing, the question of plaintiff's driver's negligence in exceeding a speed greater than was reasonable and prudent in following the preceding truck so closely, having regard to the exigencies of traffic, is presented.

2. **Automobiles § 7—**

A motorist is required, irrespective of statute, to exercise that degree of care in the operation of his vehicle which a reasonably prudent person would exercise under similar conditions, and in the discharge of such duty it is incumbent upon him to keep his vehicle under control and to keep a reasonably careful lookout so as to avoid collision with persons and vehicles upon the highway.

3. **Automobiles § 25—**

It is negligence *per se* for a motorist to operate his vehicle on a highway at a speed greater than that which is reasonable and prudent under the conditions then existing. G.S. 20-141 (a).

**4. Automobiles § 42e— Evidence held to show contributory negligence as a matter of law on part of truck driver in following another truck at a speed greater than prudent under circumstances.**

Plaintiff's evidence tended to show that the driver of plaintiff's gasoline tank truck was following another gasoline tank truck about 35 miles per hour at a distance of some 75 feet, that the blinker lights of the preceding truck were turned on as the driver thereof swung to his left to pass defendant's truck, which was standing disabled in his lane of travel, that the driver of the preceding truck, upon seeing oncoming traffic, then pulled sharply back to the right, applied his brakes and stopped three feet behind the stationary truck, that when the preceding truck was pulled back to its right plaintiff's driver was about 50 feet behind it, saw its brake lights go on, but was not able to stop his heavily loaded vehicle and, to avoid collision, drove off the highway to the right and hit a telephone pole, resulting in the damages in suit. *Held:* Plaintiff's own evidence discloses contributory negligence as a matter of law on the part of his driver and nonsuit was correctly entered.

**5. Automobiles § 52—**

The negligence of the employee of the owner of a vehicle while driving the vehicle within the scope of his employment is imputed to the owner.

APPEAL by plaintiff from *Cowper, J.,* June 1962 Civil Term of NEW HANOVER.

Civil action to recover for damage to a tractor and oil tanker, for loss of use for two weeks of the tractor and oil tanker, for loss of gasoline from the oil tanker, and for damage to a power pole, allegedly caused by the negligence of the defendants.

Defendants in their joint answer denied any negligence on their part, and pleaded contributory negligence of William Sentelle Bullard, the plaintiff's employee and driver of his tractor and oil tanker, as a bar to recovery by plaintiff .

From a judgment of involuntary nonsuit entered at the close of plaintiff's evidence, he appeals.

*John J. Burney, Jr., and Isaac C. Wright for plaintiff appellant.*
*Henry & Henry for defendant appellees.*

PARKER, J. Plaintiff's evidence shows these facts:

About 2:30 p.m. on 12 January 1959, during fair weather and "broad-open daylight," a truck owned by Gurley Milling Co., Inc., and driven by its employee J. T. Medlin, was standing still in the middle of U.S. Highway 74-76 fronting west near the Leland School, and 200 feet or further west of a railroad crossing in or near the town of Leland. It had no flares or lights behind it. Medlin was sitting in the cab with the hood of the tractor up.

About the same time, H. E. Raynor was driving a 52-foot-long tractor and oil tanker filled with 6800 gallons of gasoline for Concord Transfer Company westerly on the same highway at a speed of approximately 35 miles an hour and approaching the railroad crossing. Plaintiff's tractor and oil tanker filled with 5700 gallons of gasoline and driven by his employee William S. Bullard was following Raynor at a distance behind of 150 to 200 feet. At the railroad crossing there was a coal car on the west side of the highway which obstructed Raynor's view. After crossing the railroad there is nothing to prevent one from seeing west on the highway for several miles. When Raynor passed over the railroad crossing he saw the Gurley truck standing still in the middle of the highway 200 feet or further ahead. Raynor turned on his blinker lights to pass to the left of the Gurley truck, but could not do so because of oncoming traffic. Whereupon, he turned off his blinker lights, applied his brakes causing his lights to come on, and stopped on the highway three feet behind the Gurley truck. Raynor testified on cross-examination: "I did not need any flares. I saw his truck had stopped. I was paying attention and had no wreck — I didn't need any flares — it was daytime. I saw the truck and stopped." Medlin told Raynor "his truck knocked off in the highway," and he had been sitting there 30 minutes.

William S. Bullard, plaintiff's employee and driver, testified in substance, except when quoted: He was driving about 35 miles an hour, 75 to 100 feet behind the Raynor tractor and tanker, and keeping a lookout. He could see the distance between him and the Raynor tractor and tanker — that was as far as he could see up the highway. He saw Raynor's left hand signal come on, and Raynor swung to the left, and then pulled back sharp to the right. He didn't know exactly what was going on, and when he found out it was too late. He testified: "I was going around him to the left, and there was traffic coming, and I could not cut in unless I ran head on, and I pulled to the right I locked all my wheels. When he signalled the left turn, I slowed up and took my foot off the accelerator. When he pulled back in I knew what he was going to do. He had got on his brakes; I hit all my brakes. I brought my truck to a stop by the side of the Gurley Milling truck, off to the right of the highway." He asked Medlin what was wrong, why he didn't have out some lights or something. Medlin said "He had trouble with it every time he had left with it." After a patrolman arrived Medlin cranked up, and drove off. When Bullard drove off the highway, he struck a power pole, which damaged the tractor and tanker.

Bullard testified on cross-examination: "When I got to the railroad crossing the Concord truck was kind of on the left hand side of

the road with his signal light on; he was 75 or 100 feet in front of me. The tank had my view blocked, it was right in front of me.* * *When I crossed the railroad I could see west up the highway a mile. I knew the tanker was there, but I did not know there was a truck broke down in the middle of the road.* * *The first time I saw that truck was when I went in the ditch. I drove off the road to keep from hitting cars coming.* * *I tried to stop because I saw the tanker lights go on. I was close behind him. You can't see through an oil tanker. I tried to go around him on the right when he stopped, and I saw him pull back in the road, and I just did miss him, and I was trying to miss all of them. There were some children in the school yard playing, and I went on that side. That was the only way to keep two oil tankers from blowing up in front of the school house. I ran about 50 feet before I stopped. I was following him about 75 feet when I saw his blinker lights go on. I was about 50 feet behind him when I saw his brake lights go on. I don't know how far I was before I stopped — about 100 feet."

Plaintiff's evidence further shows the extent of damage to his tractor and tanker, the loss of 200 gallons of gasoline, the loss of profits for two weeks while the tractor and tanker were being repaired, and that he paid $26.00 for damage to the power pole.

Plaintiff alleges in his complaint that the Gurley truck stopped suddenly on the highway creating a sudden emergency and forcing plaintiff's driver to attempt to pass on the right and forcing him on a soft shoulder and into the ditch. His evidence shows that the Gurley truck had been sitting on the highway 30 minutes before Raynor stopped behind him. In spite of this variance between plaintiff's allegation and proof, but conceding that plaintiff has other allegations and proof of negligence on the part of the driver of the Gurley truck, this question is presented for decision: Does the evidence, viewed in the light most favorable to plaintiff, show that a proximate cause of his damages to his tractor and oil tanker was the negligence of the driver of his motor vehicle?

Defendants have pleaded contributory negligence on the part of the driver of plaintiff's tractor and oil tanker in driving it on a highway without exercising that degree of prudence and caution required by law, and at a rate of speed that was not reasonable and prudent under the circumstances then and there existing, and without exercising any care for his own safety. Defendants have not pleaded as an act of contributory negligence on the part of the driver of plaintiff's tractor and tanker that he was operating it in violation of the provisions of G.S. 20-152 (b), which provides "the driver of any motor truck, when traveling upon a highway outside of a business or residence district, shall not follow another motor truck within three hundred feet, but

this shall not be construed to prevent one motor truck overtaking and passing another." Therefore, defendants cannot avail themselves of the benefit of this section of the statute. *Hunt v. Wooten,* 238 N.C. 42, 76 S.E. 2d 326.

This Court said in *Crotts v. Transportation Co.,* 246 N.C. 420, 98 S.E. 2d 502: "G.S. 20-152 is a statutory declaration of the common law that 'The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, with regard for the safety of others and due regard to the speed of such vehicles and the traffic upon and condition of the highway.'" The quotation refers to G.S. 20-152 (a).

It is a general rule of law, irrespective of any statutory requirement, that the operator of a motor vehicle upon a highway must exercise that degree of care which a reasonably prudent person would exercise under similar conditions. *Crotts v. Transportation Co., supra; Smith v. Kinston,* 249 N. C. 160, 105 S.E. 2d 648; *Smith v. Rawlins,* 253 N.C. 67, 116 S.E. 2d 184. "And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway." *Badders v. Lassiter,* 240 N.C. 413, 82 S.E. 2d 357. G.S. 20-141 (a) provides that "no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing." A violation of this section of the statute, which is a safety statute, is negligence *per se. Crotts v. Transportation Co., supra; Rouse v. Jones,* 254 N.C. 575, 119 S.E. 2d 628.

Plaintiff's employee Bullard was driving his tractor and oil tanker filled with 5700 gallons of gasoline at a speed of about 35 miles an hour in the daytime on U.S. Highway 74-76 about 75 to 100 feet behind, according to Bullard's testimony, and 150 to 200 feet behind, according to Raynor's testimony, a tractor and oil tanker 52 feet long driven by Raynor. Bullard could see the distance between him and the oil tanker in front, but that was as far as he could see up the highway. Bullard knew, or in the exercise of ordinary care should have known, that the tanker ahead might be forced by other traffic on the highway to slow down or to stop, or that the driver of the long tractor and tanker ahead might attempt to turn to the left and pass a vehicle ahead, and might have to pull back on his side of the highway and slow down or stop because of oncoming traffic. Bullard traveling behind Raynor saw Raynor's left hand signal come on, and Raynor swing to the left, and then pull back sharply to the right. Bullard testified on cross-examination: "I was following him about 75 feet when I saw his blinker lights go on." When Raynor pulled back to

the right he applied his brakes, and stopped on the highway three feet behind the Gurley truck standing still on the highway. Bullard testified on cross-examination: "I was about 50 feet behind him when I saw his brake lights go on." At that time Bullard's speed was such that he knew he could not stop his heavily-loaded vehicle on the highway before colliding with the oil tanker ahead, and in order to avoid a rear-end collision with the oil tanker ahead and a blowing up of the oil tankers, he pulled off the highway to his right, struck a power pole, and brought his motor vehicle to a stop off the highway by the side of the Gurley truck.

The inference and conclusion are inescapable that Bullard was following the oil tanker ahead too closely at the speed he was driving, and that in the light of the attending circumstances an ordinarily prudent person ought reasonably to have foreseen that consequences of a generally injurious nature might probably occur as a result of such driving. Bullard in so driving a tractor and oil tanker filled with 5700 gallons of gasoline was not exercising that degree of care which a reasonably prudent man would exercise under similar conditions. If Bullard was faced with a sudden emergency or imminent danger, as plaintiff contends, but which we do not concede, by Raynor bringing his motor vehicle ahead to a stop, it is manifest that Bullard by his own want of ordinary care placed himself in a place of danger by following Raynor too closely at the speed he, Bullard, was driving, and consequently Bullard being a party to the creation of the emergency, if one existed, plaintiff cannot invoke the sudden emergency doctrine in exculpation of the negligent conduct of his driver. The negligence of his employee and driver acting within the scope of his employment is imputed to him. *Rodgers v. Thompson*, 256 N.C. 265, 123 S.E. 2d 785; *Rouse v. Jones, supra; Cockman v. Powers*, 248 N.C. 403, 103 S.E. 2d 710; *Brunson v. Gainey*, 245 N.C. 152, 95 S.E. 2d 514; 38 Am. Jur., Negligence, sec. 194 at page 876; 38 Am. Jur., Negligence, section 236. There can be no reasonable doubt that this negligent operation of plaintiff's motor vehicle by plaintiff's driver Bullard was one of the proximate causes of plaintiff's damage to his tractor and tanker. As a result plaintiff is barred from recovery from defendants by reason of the contributory negligence of his driver and employee acting within the scope of his employment. *Rollison v. Hicks*, 233 N.C. 99, 63 S.E. 2d 190; *Hampton v. Hawkins*, 219 N.C. 205, 13 S.E. 2d 227; 38 Am. Jur., Negligence, sec. 236. This decision is in accord with our decisions in somewhat similar factual situations. *Crotts v. Transportation Co., supra; Sheldon v. Childers*, 240 N.C. 449, 82 S.E. 2d 396; *Moore v. Boone*, 231 N.C. 494, 57 S.E. 2d 783; *Fawley v. Bobo*, 231 N.C. 203, 56 S.E. 2d 419; *Austin v. Overton*, 222 N.C. 89, 21 S.E. 2d 887.

The case of *Smith v. Nunn,* 257 N.C. 108, 125 S.E. 2d 351, is factually distinguishable, *inter alia,* in that plaintiff in that case was driving a passenger automobile, and not as here a tractor and oil tanker filled with 5700 gallons of gasoline, which in the event of a collision would probably blow up with disastrous consequences to the driver and others nearby.

The judgment of involuntary nonsuit below is

Affirmed.