STATE AND COUNTY OF BLADEN, NORTH CAROLINA, EX REL DONALD LEE PARKER, ADMINISTRATOR OF THE ESTATE OF KATHRYN ANN PARKER, DECEASED v. JOHN B. ALLEN, LEROY REGISTER, BROADUS HESTER, CHARLIE YARBOROUGH, AND UNITED STATES FIDELITY AND GUARANTY COMPANY

No. 6813SC361

(Filed 25 September 1968)

1. **Death § 3— wrongful death action — nonsuit for contributory negligence as a matter of law**

   A judgment of nonsuit may not be entered in an action for wrongful death on the ground of deceased's contributory negligence unless the plaintiff administrator's evidence, considered in the light most favorable to him, so clearly establishes that negligence by the deceased was one of the proximate causes of the collision as to admit of no other reasonable conclusion.

2. **Automobiles § 76— nonsuit on ground of contributory negligence in hitting stopped vehicle**

   In an action for wrongful death, plaintiff administrator's evidence discloses contributory negligence by the deceased as a matter of law in hitting a stopped vehicle where the evidence tends to show (1) that the deceased was following a truck-trailer in a northerly direction for a distance of at least three miles on a clear day, (2) that as the driver of the truck-trailer approached a bridge he saw the sheriff's car parked on the right shoulder of the road a short distance south of the bridge and the three defendant officers seated on the left rail of the bridge, (3) that as the truck-trailer went over the bridge at a decreasing rate of speed a deputy sheriff told the driver to stop, which he did, and that the car driven by the deceased hit the rear of the trailer, (4) and that the deceased had a clear and unobstructed view for at least one-half mile before she reached the point of collision.

APPEAL by plaintiff administrator from *Clark, J.,* May 1968 Civil Session BLADEN Superior Court.

This is a civil action to recover damages for the wrongful death of Kathryn Ann Parker. The action is brought by the administrator of her estate against the Sheriff and three deputies sheriff of Bladen County, together with their bonding company. Appropriate permission was obtained from the Attorney General to bring the action in the name of the State and County of Bladen on the relation of the plaintiff administrator.

In his amended complaint, plaintiff administrator alleges that on 11 March 1966 at about 5:25 p.m., his intestate received injuries, from which she later died, as the result of a collision between a Ford automobile she was driving and a Mack truck and trailer stopped on the Cape Fear River Bridge on N. C. Highway 141 in Bladen County.

The complaint alleges that plaintiff's intestate was operating the Ford northwardly on Highway 141; that as she entered onto the Cape Fear River Bridge, the truck and trailer, driven by one Highsmith and proceeding ahead of intestate in the same direction and while on said bridge, was abruptly stopped by the three defendants-deputies sheriff, without any signal or warning to intestate by said deputies or the driver of the truck, causing said intestate to run into the rear of said trailer.

The bonds executed by defendant United States Fidelity and Guaranty Company were introduced in evidence. Each bond contains a paragraph reading as follows: "The condition of this obligation is such, that if the Principal [name of sheriff or deputy sheriff] shall well and faithfully perform the duties of his office, then this obligation shall be void, otherwise to remain in full force and effect."

Plaintiff administrator alleged that the collision was caused by the negligence of the three deputies sheriff in causing the driver of the truck-trailer to stop suddenly, creating an emergency, and also violating the statute prohibiting parking or stopping on a bridge.

At the close of plaintiff's evidence, on motion of defendants, judgment as of involuntary nonsuit was entered. Plaintiff administrator appealed.

*Aaron Goldberg and Johnson, McIntyre, Hedgepeth, Biggs & Campbell by John W. Campbell for plaintiff appellant.*

*Hester & Hester by R. J. Hester, Jr., Giles R. Clark, and Henry & Henry by Ozmer L. Henry for defendant appellees.*

BRITT, J.·

Among other contentions, appellees strenuously contend that the judgment of involuntary nonsuit was fully justified because of contributory negligence on the part of plaintiff's intestate. We agree with this contention.

[1]   A judgment of nonsuit may not be entered in an action for wrongful death on the ground of contributory negligence by the deceased, unless the plaintiff's evidence, considered in the light most favorable to him, established negligence by the deceased and that such negligence was one of the proximate causes of the collision so clearly as to admit of no other reasonable conclusion. *Ratliff v. Power Co.,* 268 N.C. 605, 151 S.E. 2d 641 (opinion written by Lake, J.); *Young v. R. R.,* 266 N.C. 458, 146 S.E. 2d 441; *Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40.

The Supreme Court of our State, in many cases, has declared nonsuit proper because of contributory negligence on the part of the plaintiff. We briefly review two of those cases.

In *Black v. Milling Co.,* 257 N.C. 730, 127 S.E. 2d 515, defendant's truck was stopped disabled on the highway at about 2:30 p.m. on a fair day. Plaintiff's evidence tended to show that the driver of plaintiff's gasoline tank truck was following another gasoline tank truck about 35 mph at a distance of some 75 feet; that the blinker lights of the preceding truck were turned on as the driver thereof swung to his left to pass defendant's truck, which was standing disabled in his lane of travel; that the driver of the preceding truck, upon seeing oncoming traffic, then pulled sharply back to the right, applied his brakes and stopped three feet behind the stationary truck; that when the preceding truck was pulled back to its right, plaintiff's driver was about 50 feet behind him, saw its brake lights go on, but was not able to stop his heavily loaded vehicle, and, to avoid collision, drove off the highway to the right and hit a telephone pole, resulting in the damages in suit. In an opinion written by Parker, J. (now C.J.), the Supreme Court held that plaintiff's evidence disclosed contributory negligence as a matter of law on the part of his driver and nonsuit was correctly entered.

In *Clontz v. Krimminger,* 253 N.C. 252, 116 S.E. 2d 804, the evidence tended to show that plaintiff was following defendant's vehicle upon a highway on a foggy morning while it was still dark, that plaintiff at all times could see the tail lights of the defendant's vehicle, that defendant stopped his vehicle without signal, and that plaintiff was within 15 feet thereof before he realized the vehicle had stopped and had insufficient time to either apply his brakes or to

turn aside in order to avoid a collision. In an opinion written by Winborne, C.J., the Supreme Court held that the evidence disclosed contributory negligence on the part of plaintiff as a matter of law, barring recovery. The following is quoted from the opinion:

> "The mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed or was following too closely." 10 Blashfield's Cyc. of Automobile Law and Practice, Per. Ed., Vol. 10 p. 600. And in *Wall v. Bain*, 222 N.C. 375, 23 S.E. 2d 333 [p. 330], the Court laid down the following rule: "It is the duty of the driver of a motor vehicle not merely to look, but to keep an outlook in the direction of travel, and he is held to the duty of seeing what he ought to have seen."

> It is also a general rule of law in North Carolina "that the operator of a motor vehicle must exercise ordinary care, that is, that degree of care which an ordinarily prudent person would exercise under similar circumstances. And in the exercise of such duty it is incumbent upon the operator of a motor vehicle to keep same under control, and to keep a reasonably careful lookout, so as to avoid collision with persons and vehicles upon the highway." *Smith v. Rawlins, ante,* 67.

[2]    In the case before us, R. L. Highsmith, driver of the truck-trailer which plaintiff's intestate ran into, testified as a witness for plaintiff, and pertinent portions of his testimony are summarized as follows: He arrived at the bridge about 5:00 or 5:15 p.m.; it was daylight, the sun was up and it was fair and dry. The sheriff's car was parked on the right shoulder of N. C. Highway 141 a short distance south of the bridge. When he saw the car, he slowed down to about 40 mph and was then about 200 yards from the bridge. He saw three officers sitting on the left rail of the bridge. When he approached the bridge, Deputy Sheriff Register stood up and waved for the witness to stop, after which the witness slowed down more. "Mr. Register just stood up from the rail and * * * come towards the white line, in the center of the bridge. * * * I almost stopped, and then I was just gradually rolling along, and I was going to roll off the bridge. It was not too far. I passed by Mr. Register a piece. At that time he just said stop. * * * I stopped. I came to a complete stop. * * * I just keep the registration card over the sun visor. I just reached up there to get it and hand it to him * * *. After I got the registration card down and was going to give it to Mr. Register, the car hit me. The car hit the rear end of my tractor-trailer." It is approximately three miles from N. C. 87 to the Cape Fear River

Bridge on N. C. 141. After he turned off 87 onto 141, he looked in his mirror and Mrs. Parker turned off 87 onto 141 behind him, but he did not know how far she was behind him when he reached the bridge. Mrs. Parker did not pass the witness on 141 at any time. He had traveled about half the length of the bridge when he came to a stop at Mr. Register's direction. On cross-examination, he testified that he could see the sheriff's car for approximately one-half mile before reaching it and that he could see the bridge, on the straight road that he was traveling, for about a half mile before reaching it; that he brought the vehicle to a gradual stop and might have been going 5 mph when Mr. Register held up his hand and signaled the witness to stop. He first applied his brakes when he entered the south end of the bridge.

Roland Murphy, who was riding in the tractor-trailer with Highsmith, testified as a witness for the plaintiff, and pertinent portions of his testimony are summarized as follows: He heard Officer Register tell Highsmith to stop and Highsmith stopped, after which he reached up inside the cab to get his registration card. "When Highsmith stopped he did not take his hands off the steering wheel until he stopped. When he stopped he reached up there to get his registration card. He stopped and then reached up for the registration card. He was fixing to show it to the officer. He had it in his hand" when the car driven by Mrs. Parker hit the rear of the trailer.

State Highway Trooper Blalock testified as a witness for plaintiff, and pertinent portions of his testimony are summarized as follows: The Cape Fear River Bridge is approximately two miles from Highway 87. The bridge is about 200 yards long, with two traffic lanes twelve feet each and a pedestrian walk approximately three feet wide on each side of the bridge. The trailer was approximately eight feet wide. When he arrived at the scene, the tractor-trailer was stopped about the center of the northbound lane and the Parker Ford was up against the rear of the trailer; from the rear tires of the Ford, he noticed two black skid marks leading southward for a length of 45 feet. The Ford was fully in the northbound lane immediately behind the trailer.

Plaintiff administrator testified that he went to the scene of the collision some thirty minutes after it occurred; that he later examined the Ford and found the grille pushed back into the motor, and the motor was broken loose from the chassis underneath.

Sheryl Ann Parker, six-year-old daughter of the decedent and who, along with her three-year-old sister, was riding with Mrs. Parker at the time of the collision, was called as a witness by plain-

tiff. She testified that she and her sister were riding in the back seat and that her mother was talking to her little sister when she ran into the truck. "When my mother was talking to her she turned around and looked in the back, and it was while she was looking in the back that the wreck occurred."

We think plaintiff's evidence in the instant case established contributory negligence as a matter of law as definitely as did the evidence in *Black v. Milling Co., supra*, and *Clontz v. Krimminger, supra*. The undisputed evidence clearly showed that Mrs. Parker had a clear, unobstructed view for at least one-half mile before reaching the point of the collision. Plaintiff's own evidence refutes his allegation of sudden stopping by the driver of the truck-trailer. The evidence when viewed in the light most favorable to the plaintiff compels the conclusion that unfortunately plaintiff's intestate did not act as a reasonably prudent person under the circumstances.

The judgment of nonsuit being fully justified because of contributory negligence on the part of plaintiff's intestate as a matter of law, we deem it unnecessary to consider and discuss other questions raised by this appeal.

Affirmed.

BROCK and PARKER, JJ., concur.