IDELL H. COCKMAN v. CURTIS E. POWERS.

(Filed 21 May, 1958.)

**1. Automobiles § 19:    Negligence § 14½ —**

One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made.

**2. Same—**

One cannot escape liability for acts otherwise negligent because done under the stress of an emergency if such emergency was caused, wholly or in material part, by his own negligent or wrongful act.

**3. Automobiles § 47— Evidence held insufficient to show negligence on part of defendant who was acting in sudden emergency.**

Plaintiff's evidence tended to show that she called defendant late at night after her husband had gone to work on the night shift and insisted that defendant come to her home to talk with her in regard to reemploying her in his plant, that defendant drove up in the driveway and she came out and sat on the edge of the back seat with her feet in the open door, and that while they were talking plaintiff's husband suddenly arrived, jerked plaintiff's arm, that she jerked back and fell in the car, that plaintiff's husband, cursing and threatening defendant, threw something at him and started around the car toward defendant, and that while plaintiff's husband was thus subjecting him to physical and verbal attack defendant started the car and backed out of the driveway, that in some manner plaintiff caught in the door of the car and was dragged to her injury. *Held:* The evidence discloses that defendant was required to act in a sudden emergency, and upon plaintiff's evidence, was without fault in causing the emergency, and therefore the evidence fails to disclose negligence on his part under the circumstances.

**4. Trial § 22a—**

Plaintiff must recover, if at all, on the basis of the evidence offered,

and while on motion to nonsuit, the evidence must be considered in the light most favorable to plaintiff, no facts or inferences may be drawn from the evidence predicated upon a disbelief of her testimony.

APPEAL by plaintiff from *Phillips, J.,* November 25, 1957, Civil Term, of RANDOLPH.

Personal injury action.

Plaintiff alleged that the injuries she received on Sunday, November 11, 1956, shortly after midnight, were proximately caused by the defendant's negligent operation of his 1956 Mercury (4-door) automobile.

At the close of plaintiff's evidence, the court, upon defendant's motion, entered judgment of involuntary nonsuit.

Plaintiff excepted and appealed.

*Hammond & Walker for plaintiff, appellant.*
*Moser & Moser and Vaughn, Hudson, Ferrell & Carter by Ralph M. Stockton, Jr., for defendant, appellee.*

BOBBITT, J.   Plaintiff's testimony is the only evidence as to the cause and circumstances of her injuries. Since the only question is the sufficiency of plaintiff's evidence to survive defendant's motion for judgment of nonsuit, a close examination of plaintiff's testimony is required. Her testimony, summarized in part and quoted in part, is set out below.

Plaintiff lived with her husband, Clarence Cockman, and their 10 and 1-year old sons, some three miles south of Asheboro. She was employed, and had been for some six months, as a sales clerk in an Asheboro store; but before this employment she had worked for defendant "at different jobs at the Powers Poultry Company in Asheboro for about a year."

On Saturday, November 10, 1956, plaintiff and her husband "had had an argument," and her husband was mad when he left home. He was to be at work from midnight until 7:00 a.m. and was not expected home until around 7 or 8 o'clock on Sunday morning. Plaintiff's 10-year old son was spending the week-end away from home. Only plaintiff and her 1-year old son, who was asleep, were at home; and plaintiff "didn't expect anyone else to come to (her) house that night."

Under these circumstances, "the early morning of November 11, 1956," plaintiff telephoned defendant. She located him at his place of business in Asheboro. In response to her statement that she wanted to see him and talk to him about work, defendant told her he had been asleep, "that he didn't want to come that night, or something on that order," but would come on Sunday morning. Plaintiff insisted that she had to see him then. Thereupon, defendant consented to come to plain-

tiff's house; and some 20 to 25 minutes after the telephone conversation defendant drove his 1956 Mercury from the public road into the private driveway at the Cockman home and parked. The Cockman driveway is a "car route wide" and leads straight to the "car house." When parked, the back end of defendant's car was "about two car-lengths or probably more, from the roadway."

When plaintiff heard defendant drive up and park, she went out to defendant's parked car. She had told defendant she would meet him there. Defendant did not get out of his car, nor did he open the front door. He opened the (right) back door, which opened at the rear towards the front; and plaintiff "got in and sat on the edge of the seat on the right side." Her feet and legs were "in the door-like, call it the running-board." Plaintiff was attired in "her lounging pajamas, 2-piece, red and trimmed in white, with long sleeves and long pants."

In her testimony on direct examination, plaintiff didn't "think that the headlights or parking lights were on," on defendant's car, and didn't "think that the motor was running," when she went out to the car or during her conversation with defendant in the car. On cross-examination, she was positive that the lights were out; and her testimony as to defendant's having "started up" the car, referred to below, tends to confirm her thought that the motor was not running.

In the car, defendant seated in the front seat under the steering wheel and plaintiff seated on the back seat on the right side "as when she got in the car," plaintiff and defendant talked "a few minutes." The gist of their conversation was that plaintiff was dissatisfied with her job as sales clerk in the Asheboro store and "asked if she could go back to work at (defendant's) poultry company."

The midnight conference terminated abruptly when plaintiff's husband, "a big man physically," drove up, stopped in front of the house, and went straightway to the parked Mercury.

Plaintiff's husband, cursing, jerked plaintiff by her hand or arm. Plaintiff "jerked back from him and . . . fell in the foot-board of the car." As plaintiff struggled to get up, her husband gave attention to defendant. Defendant remained seated in the front seat, under the steering wheel. Plaintiff "saw his (her husband's) head pass and it was in the front towards Mr. Powers." She "imagined" that her husband was "in a terrible state." She testified: "My husband threw something at Mr. Powers and cursed him and threatened him; I couldn't say what he said when he threatened him; I can't recall. He said something similar to 'I will kill you,' but he was talking so fast I couldn't understand." Earlier, she had testified: "My husband got out of the car and came up to the car I was in; he commenced cursing, talking fast; I can't exactly repeat what he was saying; I couldn't say he was cursing me or Mr. Powers; I don't know whether I could repeat what

was said but he just said, 'g-- d---,' and all such as that; he raised his voice and there was all kind of vulgar talk."

In this dilemma, under physical and verbal attack by plaintiff's husband, defendant "started up" his car and backed out of the driveway. In so doing, the car "jolted" and plaintiff was thrown out. In some manner, she was caught in the door and dragged 6-8 feet. Defendant did not linger to ascertain the extent of her injuries or to render assistance.

Plaintiff alleged that defendant and Cockman "engaged in an argument"; that defendant started and backed his car, suddenly and without warning to her, "just as the plaintiff was attempting to get out of the car"; and that "the right rear door of the said Mercury automobile caught plaintiff and threw her to the ground." Her testimony shows a violent assault by Cockman on defendant, not an argument between them. Also, her testimony was that she was *thrown out* of the car under these circumstances: "I was getting up from the foot-board when the car jerked; I was not sitting but I was down, my head was not down; I was trying to get up to get out; I was not flat on my back, I was not on my side, I was kind of in a sitting position." However, the variance between plaintiff's allegations and her testimony is not the basis of decision.

It would seem, accepting plaintiff's testimony, that plaintiff's husband did not correctly appraise the innocent purpose of plaintiff's meeting with defendant or the subject of their conversation. Be that as it may, the impression is indelible that plaintiff's husband's words and actions were such that defendant had reasonable ground to believe that he was in danger of suffering serious bodily harm or even death at the hands of his assailant. It is clear that, in starting and backing his car, he acted under circumstances of emergency. In fact, it is apparent that neither plaintiff nor defendant was then concerned with what the other was doing or might do. Rather, each was concerned with what plaintiff's husband was doing or might do.

Decision requires the application of well settled legal principles to a factual situation somewhat different from any heretofore considered by this Court. Indeed, despite diligent research, no decision in any jurisdiction involving a similar factual situation has come to our attention.

The doctrine of intervening negligence, *Riddle v. Artis*, 243 N.C. 668, 91 S.E. 2d 894, and cases cited, as ordinarily applied, does not fit the present factual situation. The assault by Cockman on defendant did not intervene between defendant's act and plaintiff's injury. On the contrary, it preceded defendant's act and was the cause thereof. Plaintiff's testimony is explicit that defendant started and backed his

car while he was under violent attack by Cockman. Thus, defendant's àct intervened between Cockman's wrongful act and plaintiff's injury; and the question is whether defendant's act may be considered *a negligent act* proximately causing plaintiff's injury. *Butner v. Spease,* 217 N. C. 82, 88, 6 S.E. 2d 808, which cites *Scott v. Shepherd,* 2 Bl. 892 (*Squib* case).

"One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have done." Stacy, C. J., in *Ingle v. Cassady,* 208 N.C. 497, 181 S.E. 562; *Simmons v. Rogers,* 247 N.C. 340, 348, 100 S.E. 2d 849, and cases cited; 38 Am. Jur., Negligence Sec. 41; 65 C.J.S., Negligence Sec. 17.

The only reasonable inference that may be drawn from plaintiff's testimony is that defendant, under the circumstances, was required to act instantly, without opportunity to reason or to reflect, to protect himself from serious bodily harm; and that the threats and violence of plaintiff's husband were of such nature that defendant's attempt to leave the premises as quickly as possible cannot be considered doing what an ordinarily prudent man would not have done under the same or similar circumstances. Moreover, it would seem that the threats and violence of plaintiff's husband were of such nature as to destroy wholly defendant's capacity to make inquiry or observation as to plaintiff's position following her tussle with her husband in the back of defendant's car.

True, one cannot escape liability for acts otherwise negligent because done under the stress of an emergency if such emergency was caused, wholly or in material part, by his own negligent or wrongful act. *Brunson v. Gainey,* 245 N.C. 152, 95 S.E. 2d 514, and cases cited; 38 Am. Jur., Negligence Sec. 41; 65 C.J.S., Negligence Sec. 17(e).

On the basis of plaintiff's testimony, can it be fairly said that the sudden emergency with which he was confronted was caused, wholly or in material part, by defendant's wrongful conduct?

If it were our function to weigh plaintiff's testimony, it might, in some respects, impose an undue burden on credulity. Suffice to say, we must accept plaintiff's testimony at full face value in passing upon the legal sufficiency of the evidence to survive the motion for nonsuit.

It appears from plaintiff's testimony that her husband's rage and violence, without allowing either plaintiff or defendant an opportunity to explain the wholly innocent character of their meeting, was the sole cause of the emergency situation in which defendant acted. She testified that she hadn't given a thought "to whether there would be trouble at (her) house if (her) husband returned that night."

As to defendant, be it remembered that plaintiff is quite positive

.that defendant came to her house on this occasion reluctantly, because of plaintiff's insistence and for the sole purpose of discussing plaintiff's request for re-employment at defendant's place of business. There is nothing in plaintiff's testimony to the effect that there had been any prior relationship between plaintiff and defendant except that of employee and employer, which had terminated some six months previously, or that defendant knew that plaintiff was alone, or that she and her husband had quarreled, or that the purpose of their meeting was other than that stated by plaintiff in her telephone conversation, or that his conduct after arrival involved any improper or wrongful act on his part, or that he had reason to anticipate sudden and unexplained violence on the part of plaintiff's husband if he were at home or came to his home. Accepting plaintiff's testimony, the most that can be said is that defendant was indiscreet in going to plaintiff's home or in not refusing to talk with plaintiff under the circumstances described in her testimony.

Accepting plaintiff's testimony, it may be that she, with knowledge of facts she did not communicate to defendant, set the stage for the sudden emergency by arranging for defendant to come to her home under conditions known to her but not communicated to defendant.

We conclude that the sudden and critical emergency in which defendant acted was not caused by any wrongful act of defendant but wholly by the violence of plaintiff's husband. If plaintiff set the stage therefor, this cannot avail her in her action against defendant.

If it be considered that this is an unrealistic appraisal of the factual situation, our answer is that plaintiff's testimony has made it so. Plaintiff must recover, if at all, on the basis of the evidence offered. While the evidence must be taken in the light most favorable to plaintiff, we are not at liberty to base decision on facts or inferences predicated upon disbelief of her testimony.

Affirmed.