GEORGE WOODROW RODGERS v. WILLIAM ALONZO THOMPSON AND JOHN EARL GREGORY, JR.

(Filed 2 February, 1962.)

**1. Automobiles § 41d—**

The evidence viewed in the light most favorable to plaintiff tended to show that plaintiff gave plainly visible signals of his intention to turn left from the highway into a private driveway and that notwithstanding such signals the following vehicle attempted to pass after plaintiff had already started his turn, resulting in the collision which set fire to the truck plaintiff was driving, and that plaintiff was badly burned in the fire. *Held:* The evidence was sufficient to be submitted to the jury on the issue of defendants' negligence.

**2. Same; Damages § 7— Evidence held to show that plaintiff's injuries were the proximate result of defendants' negligence.**

The evidence tended to show that plaintiff was driving a truck trans-

porting liquid petroleum gas, that defendants' vehicle sideswiped plaintiff's truck, immediately resulting in a fire under the meter box on the left side, that plaintiff stopped his truck and ran to the rear to close the valve under the truck in order to prevent an explosion, and that while he was closing the valve the entire truck was engulfed in flaming gas and plaintiff was severely burned. The evidence further tended to show that plaintiff might have run from the truck and escaped injury. *Held:* Plaintiff's act in closing the valve in order to prevent an explosion which would have destroyed the truck and also endangered plaintiff's life and the lives of possible bystanders was a normal response to the stimulus of an extremely dangerous situation created by defendants' negligence, and therefore plaintiff's injuries were proximately caused by defendants' negligence, and nonsuit was correctly denied.

**3. Negligence §§ 11, 21—**

Contributory negligence is an affirmative defense and must be alleged and proved by defendant.

**4. Same;   Negligence § 20—**

The violation of G.S. 119-49 by the driver of a truck transporting liquid petroleum gas cannot be asserted as contributory negligence on the part of such driver in his action to recover for burns received as a result of a collision when defendants do not plead a violation of the statute or the applicable safety regulations.

**5. Negligence § 26—   Evidence held not to disclose contributory negligence as matter of law on part of plaintiff confronted with emergency.**

The evidence considered in the light most favorable to plaintiff tended to show that plaintiff was driving a truck transporting liquid petroleum gas, that, as a result of a collision brought about by defendants' negligence, fire immediately broke out under the meter box on the side of the truck, that plaintiff, confronted with the emergency to which he did not contribute in whole or in part, stopped the truck and ran to the rear and was turning off the valve sealing the tank of the truck when the truck was enveloped in flame, badly burning plaintiff, and that the possibility of an explosion, endangering plaintiff's own life and safety, was imminent and real. *Held:* The evidence does not establish contributory negligence on the part of plaintiff as a matter of law in attempting to turn off the valve, even though he might have run away and avoided injury, it being a question for the jury whether plaintiff acted in the emergency as an ordinarily prudent man would have acted under the same or like circumstances.

**6. Negligence § 14—**

Where defendants' negligence brings about a sudden emergency, and plaintiff's acts do not contribute in causing the emergency, either in whole or in part, plaintiff, while under duty to exercise ordinary care for his own safety, is not held to the standard of selecting the wisest course of conduct, but is required only to act as a reasonably prudent man would have acted under the same or similar circumstances.

---

RODGERS *v.* THOMPSON.

---

**7. Negligence § 11—**

"Contributory negligence" *ex vi termini* implies negligence on the part of defendant.

**8. Negligence § 26—**

Nonsuit may not be granted on the ground of contributory negligence unless plaintiff's own evidence establishes this defense as the sole reasonable conclusion.

**9. Negligence §§ 14, 28—**

Where plaintiff's evidence is to the effect that his acts did not contribute in whole or in part to the creation of the emergency, but defendants' allegations and evidence tend to show that the emergency was caused or contributed to by plaintiff's contributory negligence, the failure of the court to charge the jury that the doctrine of emergency does not apply if the emergency was caused or contributed to by plaintiff or was occasioned by the concurrent negligence of plaintiff and defendants, must be held for prejudicial error.

**10. Same—**

Plaintiff may rely upon the doctrine of sudden emergency either if there is a real danger or the circumstances are such as to create the apprehension of danger in the mind of an ordinarily prudent person, but an instruction which permits plaintiff to rely upon the doctrine solely upon his own belief that an emergency existed, is error.

**11. Negligence § 3—**

A party is not entitled to the benefit of the doctrine of sudden emergency if he himself contributes to the creation of the emergency in whole or in part.

**12. Trial § 33—**

The court is required to declare the law and apply the evidence thereto in regard to each substantial and essential feature of the case without any request for special instructions.

**13. Negligence §§ 11, 28—**

Contributory negligence bars recovery if it is one of the proximate causes of the injury, and an instruction which repeatedly charges the jury to answer the issue in the affirmative if it found that negligence on the part of plaintiff was "the" proximate cause of the injury must be held prejudicial notwithstanding that in other portions of the charge the court used the words "a proximate cause."

**14. Appeal and Error § 42—**

Incorrect instructions upon a material aspect of the case must be held for prejudicial error notwithstanding that in other portions of the charge the principle is correctly stated, since the jury could not know which of the conflicting instructions is correct.

APPEAL by defendants from *Mintz, J.,* January-February 1961 Term of WAYNE.

Civil action to recover damages for personal injuries, allegedly caused by the actionable negligence of defendants. Defendants in their joint answer deny any negligence on their part, and further allege as a bar to plaintiff's action contributory negligence of plaintiff.

The parties stipulated that on 30 June 1959 John Earl Gregory, Jr., was operating a Chevrolet truck owned by William Alonzo Thompson, and at the time he was an agent, servant, or employee of Thompson and acting within the scope and course of his employment.

Plaintiff has proof to this effect:

On 30 June 1959, a clear and very hot day with temperature of 103 degrees, he, an employee of Suburban Rulane Gas Company, was operating his employer's 1956 International tank truck filled with about 550 gallons of liquefied petroleum gas under pressure north along U. S. Highway 117 between Goldsboro and Fremont. The truck had an over-all length of about 25 feet, and was equipped with mechanical devices to signal turns, stopping, and stops, which were in good working order. Two gas lines were attached to the truck's tank. He testified: "One line was attached to the big two-inch valve, went into the pumper into the meter to the back of the truck, or to a 100-foot hose you drag out to fill the customer's tank. Then you have another small line 3/8 copper tubing coming out of the bottom of the tank going into the front of the truck. . . . At the time of this collision there was liquid gas in those two lines. . . . When you cut off the two-inch valves the gas in those lines could not get back into the tank. Conversely, no gas could get from the tank into the lines." The two-inch valve was located underneath the truck about two feet from its back. Delivery of gas into a person's home is controlled by a valve at the end of the hose. Normally the two-inch valve is not cut off until the last delivery. Gas remains in the line from the valve to the pump to the meter to the line going back to the rear of the truck and then into the 100 feet of hose all the time the truck is normally operated on the road, and that was the condition on the day of the collision. He knew the gas was dangerous and explosive.

When he left Goldsboro's city limits travelling north towards Fremont, he saw the Thompson Chevrolet two-ton truck driven by Gregory travelling behind him. He saw it continuously following him from then until the collision some ten or twelve miles further north. It tried to pass him several times, but it couldn't get clearance. He was driving at a speed of 45 miles an hour. When he reached an overhead bridge over the tracks of the A. C. L. Railroad between Pikeville and Fremont, some ten or twelve miles north of Goldsboro, he intended to cross the bridge and enter a driveway on his left leading to his brother-in-law's house. This driveway is 700 to 900 feet from the rail of the over-

head bridge. On the northern exit of this overhead bridge there are double solid yellow lines on the highway, which end at the point the so-called Aycock Memorial Road intersects the U. S. Highway from the east, and almost opposite this Road is a private dirt road leading west from the highway to private residences. Two hundred fifty feet north there is another dirt road on the west of the highway leading to his brother-in-law's house, which he intended to enter.

When he was crossing the bridge and going down from it, he applied his brakes to slow down, and also to signal behind him he was reducing speed. He looked in his rearview mirror to see if the Gregory truck was behind him and what it was doing. He saw it directly behind in its right-hand lane of traffic. When he was 300 to 400 feet from his brother-in-law's driveway, he turned on his electrical signal to indicate he was going to make a left turn, and also gave a signal with his left arm by extending his arm and pointing his finger to indicate the same thing. He was constantly looking in his rearview mirror to see if the Gregory truck was in its proper lane, or if it was attempting to pass. He looked north to make sure he had clearance to turn left. After he passed the intersection some two hundred fifty feet south of his brother-in-law's driveway, and after he saw the Gregory truck was not attempting to pass him, he began to angle his truck to the left. At a point 125 to 150 feet from the driveway with his truck almost halfway across the broken white line in the center of the highway, he looked again and the Gregory truck was still behind him. He was constantly maintaining his signals and pressure on his brakes. When he was almost at the driveway and almost off the highway on his left, the Gregory truck without blowing its horn and without giving any signals started to pass him on his left. He was trying to turn right to avoid a collision, when the Gregory truck sideswiped his truck, ripping the meter box at the left rear of his cab off of the truck. The meter box is on the left side of the truck directly behind the cab. His truck was immediately set on fire under the meter box. He applied his brakes, and brought his truck to a complete stop.

He jumped out of his truck, ran to its rear, and closed the main two-inch valve coming out of the bottom of the gas tank. The fire was immediately underneath the cab and meter box. There was no fire at the rear of the truck at that time. When he was closing the two-inch valve, the entire truck was engulfed in flaming gas, and he was severely burned.

He didn't run away from the truck, because he feared an explosion, and his purpose in staying there to turn off the valve was to prevent, if possible, an explosion. He thought that probably he might be saving his own life as well as onlookers who might gather at the scene,

and also save the truck and property nearby. He testified on cross-examination there is a possibility he could have run from the truck, and not have been burned. It is possible that in ten seconds he could have run about 100 yards from the truck.

Defendants have offered evidence to this effect: When Gregory reached the bottom of the overhead bridge and passed the road to the right, he saw his way clear, sounded his horn, pulled on his left-turn signal, and got in the left lane. He got up beside Rodgers' truck, and noticed the light on its left front fender. He saw no hand signals. He sounded his horn again. At that time he was about even with his cab. Plaintiff turned on his left-turn signal, and started to turn. It was too late to do anything but try to miss him. He swerved to the left across the driveway up into the curve. When he went by his right front fender smashed Rodgers' left front fender. He stopped, got out, went back, and the truck was in flames. Gregory knew he was following a gas truck.

The jury found by its verdict that plaintiff was injured by the negligence of the defendants, as alleged; that plaintiff was not guilty of contributory negligence, as alleged in the answer; and awarded Rodgers damages in the sum of $30,860.95.

From judgment entered in accord with the verdict, defendants appeal.

*Dees, Dees & Smith, By William A. Dees, Jr., and White & Aycock, By Charles B. Aycock, Attorneys for defendants appellants.*

*Lucas, Rand and Rose, and Taylor, Allen and Warren, Attorneys for plaintiff appellee.*

PARKER, J. Defendants assign as error the denial of their motion for judgment of involuntary nonsuit made at the close of all the evidence.

Defendants' first contention is that the plaintiff has failed to make out a case of negligence against them. Plaintiff's evidence, including the stipulation of the parties, considered in the light most favorable to him and giving him the benefit of every legitimate inference to be drawn therefrom, (*Hutchens v. Southard*, 254 N.C. 428, 119 S.E. 2d 205), tends to show that the collision between the truck driven by plaintiff and the defendants' truck, and the immediately resulting fire on plaintiff's truck under the meter box, were caused by the negligence of the defendants in the operation of their truck, and notwithstanding plaintiff's intervening act in immediately stopping his truck, jumping out, and running to the rear to close the valve to seal the 550 gallons of liquefied petroleum gas in the tank of his truck in order to prevent an explosion, which probably might take his life and destroy

the truck, and when he was closing the valve the entire truck was engulfed in flaming gas and he was severely burned, defendants' negligence continued to be efficiently, actively, and potently operative to produce the injuries he suffered from the fire, and that the intervening act of plaintiff was a normal response to the stimulus of an extremely dangerous situation created by the defendants' negligent operation of their truck.

According to the American Law Institute Restatement, Torts (Negligence), Vol. 2, sec. 443, Comment a, in order for proximate causation to exist "it is not necessary that an act which is done by the person harmed or by a third person should be 'reasonable'; that is, that the act should be one which a reasonable man would regard as not involving an unreasonable risk to himself or others. It is enough that the act is a normal response to the stimulus of the situation created by the actor's negligence. If it be done by the person who is harmed and is unreasonable in the sense above stated, it may amount to contributory negligence which as such prevents him from recovering . . . , but the actor's negligent conduct [that is, in automobile cases, the negligence causing the accident] is nonetheless the legal cause of the harm." Plaintiff's acts in running to the rear of his truck to cut off the valve and seal the 550 gallons of liquefied petroleum gas in the tank to prevent an explosion, and in closing the valve, were of such a character as to be naturally called forth by defendants' negligence— to borrow the expression of Justice Cardozo they were the "child of the occasion." *Wagner v. International R. Co.,* 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1.

Plaintiff's evidence, considered in the light most favorable to him and giving to him every legitimate inference to be drawn therefrom, tends to show negligence on defendants' part, foreseeable injury, and proximate causation of his injuries in such ample manner as to require neither further discussion nor citation of authority. "There can rarely be much doubt as to the proximate causation where the injured person was engaged in escaping threatened injury to himself." 166 A.L.R., Anno., p. 754. There is no merit to defendants' contentions that plaintiff failed to make out a case of actionable negligence against them.

Defendants further contend that plaintiff was guilty of contributory negligence as a matter of law in violating the provisions of G.S. 119-49, minimum standards of safety in transporting liquefied petroleum gases, and in violating the provisions of the pamphlets referred to in the statute. This contention is without merit, for the very simple reason that defendants in their answer have not pleaded a violation of this statute, and of the pamphlets therein referred to, by plaintiff as contributory negligence. The plea of contributory negligence is an affirma-

tive defense, and when relied upon as a defense, it must be set up in the answer and proved on the trial. G.S. 1-139; *James v. R.R.*, 233 N.C. 591, 65 S.E. 2d 214. This Court speaking by *Ervin, J.*, accurately said in *Hunt v. Wooten*, 238 N.C. 42, 76 S.E. 2d 326: "The first requirement is that the defendant must specially plead in his answer an act or omission of the plaintiff constituting contributory negligence in law; and the second requirement is that the defendant must prove on the trial the act or omission of the plaintiff so pleaded. Allegation without proof and proof without allegation are equally unavailing to the defendant."

In addition, defendants contend that plaintiff was guilty of contributory negligence as a matter of law, for that his own evidence clearly shows he knew the liquefied petroleum gas he was transporting was dangerous and explosive, that "by his own negligence in leaving the valve open a dangerous situation of which he was cognizant" was created, that after the collision he saw his truck was on fire, and notwithstanding such knowledge he went to the rear of the truck to cut off the valve "to save his employer's property," thereby rashly exposing himself to obvious danger, when there was a possibility he could have run from the truck and not have been burned, and that there was no "person or any other property in the vicinity of the plaintiff's truck immediately after the collision."

Plaintiff's evidence shows he was in the truck immediately after the collision and immediate resulting fire under the meter box, and at that time there was no fire at the rear of the truck. He testified his purpose in running to the rear of the truck to turn off the valve to seal the 550 gallons of liquefied petroleum gas in the tank of the truck was to prevent, if possible, an explosion; he thought that probably he might thereby be saving his own life, as well as onlookers who might gather at the scene, and also save the truck and property nearby. His evidence on cross-examination is that he could possibly have run from the truck, and not have been burned. When he was closing the two-inch valve at the rear of the truck, the entire truck was engulfed in flames, and he was severely burned.

Plaintiff's evidence tends to show negligence on the defendants' part in bringing about the extremely dangerous situation in which he was placed, and that no negligence on his part in whole or in part caused or contributed to his extremely dangerous situation and the sudden emergency confronting him. His evidence further tends to show that the peril of an explosion and of an engulfing fire that would thereby follow threatening his own life and safety was imminent and real and not merely imaginary or speculative, unless he cut off the valve at the rear of the truck, and sealed the 550 gallons of liquefied petroleum gas

in the tank of the truck. In addition, his evidence tends to show he was required to act instantaneously in a sudden emergency caused by defendants' negligence, when he was free from negligence in bringing it about or contributing to it, in the presence of, or under a reasonably well-founded apprehension of, impending and deadly peril, such as is calculated to produce fright, excitement, or bewilderment, and affect the judgment.

The rule is well established with us, and elsewhere in the various jurisdictions, that when a plaintiff is required to act suddenly and in the face of real, or under a reasonably well-founded apprehension of, impending and imminent danger to himself caused by defendants' negligence, when he was free from any negligence in bringing it about or contributing to it in whole or in part, he is not required to act as though he had time for deliberation and the full exercise of his judgment and reasoning faculties. Ordinary care to avoid injury is all that is required, but ordinary care is required; a sudden peril or emergency does not relieve him of the duty of exercising ordinary care for his own safety. The test is, did he act as a reasonably prudent man would have acted under the same or similar circumstances. *Cockman v. Powers*, 248 N.C. 403, 103 S.E. 2d 710; *Winfield v. Smith*, 230 N.C. 392, 53 S.E. 2d 251; *Hoke v. Greyhound Corp.*, 227 N.C. 412, 42 S.E. 2d 593; *Ingle v. Cassady*, 208 N.C. 497, 181 S.E. 562; 65 C.J.S., Negligence, sec. 123; 38 Am. Jur., Negligence, secs. 194, 195, 206.

"When a person exercises the care and caution in an emergency [which he did not cause or bring about in whole or material part, and which was caused by the negligence of another] which an ordinarily prudent person would have used under the same or similar circumstances, he is not negligent merely because he fails to exercise his best judgment, or does not take the safest course, or does not take every precaution which from a careful review of the circumstances it appears he might have taken, or, in attempting to escape the danger under such circumstances, puts himself in a more dangerous position." 65 C.J.S., Negligence, pp. 734-5.

"One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a person of ordinary care and prudence, similarly situated, would have made." *Ingle v. Cassady, supra.*

This is not a case where one sees a person in imminent and serious peril through the negligence of another, and attempts a rescue, as in *Alford v. Washington*, 244 N.C. 132, 92 S.E. 2d 788, and *Norris v. R. R.*, 152 N.C. 505, 67 S.E. 1017. *Pegram v. R. R.*, 139 N.C. 303, 51 S.E. 975, relied on by defendants, is easily distinguishable in that, *inter alia*, plaintiff's intestate Wilson was in a place of safety and voluntarily

went back into the burning building to save his employer's property.

The term "contributory negligence" *ex vi termini* implies or presupposes negligence on the part of the defendant. *Pruett v. Inman,* 252 N.C. 520, 114 S.E. 2d 360. The rule is firmly embedded in our adjective law that a defendant may not avail himself of his plea of contributory negligence by a motion for a compulsory judgment of nonsuit under G.S. 1-183, unless the facts necessary to show contributory negligence are established so clearly by plaintiff's own evidence that no other conclusion can be reasonably drawn therefrom. *Pruett v. Inman, supra; Bondurant v. Mastin,* 252 N.C. 190, 113 S.E. 2d 292; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307; *Daughtry v. Cline,* 224 N.C. 381, 30 S.E. 2d 322, 154 A.L.R. 789; *Elder v. R. R.,* 194 N.C. 617, 140 S.E. 298.

"Only when plaintiff proves himself out of court is he to be nonsuited on the evidence of contributory negligence." *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601.

In *Jay v. Walla Walla College,* 53 Wash. 2d 590, 335 p. 2d 458, while plaintiff, a third-year chemistry student at the college, was conducting an authorized experiment in the analytical laboratory in the basement of the college chemistry building, he heard the sound of a small explosion in the organic laboratory across the hall. He entered that laboratory and saw two students attempting to quench the flames of a fire with a fire extinguisher. He picked up an extinguisher lying on the floor in the hallway, re-entered the room, and attempted to use it on the fire, but it was empty. While he was attempting to use it, a violent explosion from the materials used in the experiment occurred directly in front of him. The three persons in the room were injured by flying fragments of glass. Jay's retina of his left eye was punctured, and required surgery. Jay brought this action for damages suffered as a result of the explosion. The court held, *inter alia,* questions whether an emergency existed, whether fire endangered all of the occupants of the building, and whether Jay acted as a reasonably prudent person in attempting to put out the fire rather than fleeing from the premises were for the jury. A verdict for plaintiff in the amount of $27,303.00 was affirmed.

In *Legan & McClure Lumber Co. v. Fairchild,* 155 Miss. 271, 124 So. 336, the Court held: In action for death of employee injured while attempting to stop engine in sawmill after belt broke and before explosion, evidence warranted jury in finding that failure of employee to attempt to have steam shut off at power plant, rather than to reach engine throttle, was not such want of reasonable care on his part as would defeat recovery for his injury and death.

Plaintiff's evidence does not show so clearly that no other con-

clusion can be drawn therefrom that he did not act as a reasonably prudent man would have acted under the factual situation of deadly, imminent and real peril confronting him in going to the rear of the truck to close the valve and seal the 550 gallons of liquefied petroleum gas in the tank of the truck to prevent, if possible, an explosion by which act probably he might be saving his own life, as well as the truck of his employer. For the trial judge to have held that the plaintiff was guilty of contributory negligence as a matter of law would have been error.

The trial court properly overruled defendants' motion for judgment of compulsory nonsuit made at the close of all the evidence.

The court in its charge on conduct in emergencies did not state to the jury that the doctrine does not apply if the peril or emergency was caused or contributed to by plaintiff's negligence or was occasioned by concurrent negligence of the plaintiff and defendants. *Watts v. Watts*, 252 N.C. 352, 113 S.E. 2d 720; *Cockman v. Powers, supra; Hoke v. Greyhound Corp., supra;* Strong's N. C. Index, Vol. 3, Negligence, sec. 14; 65 C.J.S., Negligence, pp. 735-6.

On the second issue defendants have *allegata* and *probata* tending to show that the peril or emergency in which plaintiff was placed was caused or contributed to by his negligence or was occasioned by concurrent negligence of plaintiff and themselves.

Defendants assign as error this part of the charge on the second issue of contributory negligence, we quote in large part and summarize in small part: "In cases where a special hazard exists the court instructs you that the prudent man rule and due care rule still applies. However, one in the exercise of due care, where a special hazard exists, is not required to weigh in fine balance whether his particular plans in taking a risk will be safer for himself than some other course, for the law recognizes that men under pressure when a special hazard exists, either actual, or belief, will be motivated and influenced by many factors which do not appear in an average situation, such as personal safety," and other things of like import. This charge is prejudicial error, *inter alia*, in that it does not state that the doctrine of sudden emergency does not apply if it was caused or contributed to by plaintiff's negligence, or was occasioned by concurrent negligence of plaintiff and defendants, and further in that the court charged "when a special hazard exists, either actual, or belief," because "in order to relieve a person from the consequences of his own acts on the ground that they were done suddenly and under impending danger, there must be either a real danger or the circumstances must be such as might create apprehension of danger in the mind of an ordinarily prudent person." 65 C.J.S., Negligence, p. 735.

Defendants assign as error this part of the charge: "If the plaintiff negligently failed to proceed with due caution and circumspection in his effort to turn to the left across the highway, or that the plaintiff in the exercise of reasonable care for his own safety and the safety of others, including the defendant Gregory and his passenger, Hurst, travelers on the highway, property on the highway or adjacent thereto, stayed with the burning vehicle, or attempted to operate a mechanism thereon he delayed his safe departure, whereas a reasonably prudent man would have departed the burning vehicle, or that a reasonably prudent man would have concluded that no such action was necessary for the protection of himself and others, and if you should find that such negligence on the part of the plaintiff was the proximate cause of the collision and controversy, as defendants alleged, then you would answer the second issue yes." The second issue is the issue of contributory negligence. This part of the charge is prejudicial error to defendants, in that, *inter alia*, the court assumed as a fact, and so charged the jury in effect, that plaintiff was entitled to the benefit of the doctrine of sudden emergency, when defendants had evidence tending to show that the imminent and real peril from an explosion and ensuing engulfing fire was caused or contributed to by plaintiff's negligence, or was occasioned by concurrent negligence of plaintiff and defendants. A party is not entitled to the benefit of the doctrine of sudden emergency, if he himself contributes to its creation in whole or in part.

In *Brannon v. Ellis*, 240 N.C. 81, 81 S.E. 2d 196, the Court said: "In both civil and criminal cases, it is imperative, in the charge to the jury, that the law be declared, explained and applied to the evidence bearing on the substantial and essential features of the case without any request for special instructions."

Defendants further assign as error that the court instructed the jury that in order to show contributory negligence on plaintiff's part, the burden of proof was on defendants to prove by the greater weight of the evidence that plaintiff was negligent, and such negligence was *the* proximate cause of his injuries. Defendants also assign as error that the court in attempting to apply the law to the facts charged: "and if you should find that such negligence on the part of the plaintiff was *the* proximate cause of the collision and controversy, as defendants alleged, then you would answer the second issue yes." At several other places in the charge in the same connection the court used the words "*the* proximate cause." This was placing too heavy a burden on defendants because the negligence, if any, of plaintiff to bar recovery need not be the sole proximate cause of his injury; it suffices, if it contributed to his injury as a proximate cause, or one of them. *Tew*

*v. Runnels,* 249 N.C. 1, 105 S.E. 2d 108; *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549; *Tyson v. Ford,* 228 N.C. 778, 47 S. E. 2d 251. The fact that the court elsewhere in its charge on contributory negligence several times used the words "a proximate cause" cannot be held to have cured the repeated use of the words "the proximate cause," because under such circumstances the jury could not possibly have known which was correct.

Plaintiff alleges in his complaint that his truck after the collision "was almost immediately engulfed in a flame of burning gas." And then "the plaintiff Rodgers, as the truck was engulfed in flame and while he was endeavoring to prevent a catastrophic explosion of Propane gas, was severely and painfully burned." That does not strictly conform to his proof, which is that immediately after the collision there was fire under the meter box, and no fire at the rear of the truck. He has no allegation as to why he went to the rear of the truck. Whether this is a material variance between *allegata* and *probata* is a question not without difficulty. However, defendants on this appeal have not argued the question, and the variance has apparently not misled them. We do not deem it proper to nonsuit the case for variance *sua sponte,* particularly when defendants raise no question in respect to it. Doubtless, in the lower court the complaint will be amended to avoid a variance. As to variance see Strong's N. C. Index, Vol. 4, Trial, sec. 26, Nonsuit for Variance, for a clear statement of the applicable law.

For error in the charge defendants are entitled to a new trial, and it is so ordered.

New trial.