GWENDOLYN R. MASCIULLI, INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR TARA MASCIULLI, A MINOR v. CHARLES ALBERT TUCKER AND TERRI LIN KLECKNER

No. 8510SC1308

(Filed 5 August 1986)

1. **Automobiles and Other Vehicles § 90.9— duty to maintain proper lookout—refusal to instruct error**

    In an action to recover for personal injuries sustained by plaintiff in an automobile accident, the trial court erred in refusing to instruct on defendant's duty to maintain a proper lookout where the evidence tended to show that defendant was operating a motor vehicle in the rain on wet pavement; she was able to discern that she was approaching an automobile in her lane of travel; she saw the brake lights but mistook them for taillights and assumed that the automobile was moving; the driver of the stopped automobile had his left turn signal on; and once defendant realized that the vehicle was stopped, she slammed on her brakes too late to avoid a rear end collision.

2. **Automobiles and Other Vehicles § 90.9— failure to maintain proper control of vehicle—refusal to instruct error**

    In an action to recover for personal injuries sustained by plaintiff in an automobile accident, the trial court erred in refusing to instruct on defendant's failure to maintain proper control of her automobile where the evidence tended to show that defendant, while operating an automobile under hazardous conditions, perceived an automobile in her lane of travel, but despite her "slamming" on the brakes she was unable to maintain control of her automobile and slid into the rear end of the automobile in front of her.

**3. Automobiles and Other Vehicles § 90.7— sudden emergency—instruction not supported by evidence**

In an action to recover for personal injuries sustained by plaintiff in an automobile accident, the trial court erred in instructing the jury on the applicability of the doctrine of sudden emergency where the evidence tended to show that defendant was driving in the rain on wet pavement; there was no evidence about a sudden downpour or sudden change of driving conditions; the evidence tended to show that defendant was driving at an excessive rate of speed for the existing conditions; and any alleged emergency was not sudden and was caused in material part by defendant's disregard of the existing conditions and mistaken assumption that the automobile which she hit was moving.

APPEAL by plaintiff from *Bailey, Judge*. Judgment entered 10 July 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 6 May 1986.

This is a civil action instituted by Gwendolyn R. Masciulli in her individual capacity and as guardian ad litem for Tara Masciulli, a minor, seeking damages in her individual capacity and damages for personal injuries Tara sustained in a two car automobile collision allegedly caused by the negligence of defendant Kleckner. In her complaint, plaintiff alleged, *inter alia*, that on 10 January 1984, defendant Terri Lin Kleckner, while operating defendant Charles A. Tucker's automobile, was grossly negligent by (1) operating the motor vehicle at an excessive rate of speed under the existing conditions, (2) following too closely, and (3) failing to keep a proper lookout and to keep the motor vehicle under proper control. Plaintiff further averred that defendant Kleckner operated the motor vehicle with defendant Tucker's permission; drove the motor vehicle into the rear end of the motor vehicle plaintiff Tara was a passenger in, resulting in plaintiff Tara sustaining serious bodily injuries. Plaintiff Tara sought $50,000.00 as compensatory damages and $10,000.00 punitive damages. Defendant answered plaintiff's complaint denying all pertinent allegations of negligence and averred that defendant Kleckner's response to a sudden emergency not of her own creation was reasonable under the circumstances and moved the court for a dismissal pursuant to Rule 12(b)(6), N.C. Rules Civ. P. When the case came on for jury trial 8 July 1985, the trial court dismissed plaintiffs' claim for punitive damages.

Evidence adduced at trial tended to show the following:

On 10 January 1984 around 5:15 p.m., plaintiff Tara, a minor, was a passenger in the rear seat of a motor vehicle owned and operated by Randolph Fryar. The vehicle was traveling in a southerly direction on North Hills Drive in Raleigh, North Carolina. At the time the posted speed limit on this street was thirty-five (35) miles per hour. The then existing conditions were raining and the pavement was wet. The weather conditions were such that Fryar had his headlights turned on. Fryar brought his automobile to a stop in the southbound traveling lane atop the crest of a small hill in order to allow oncoming northbound traffic to pass so that he could execute a left turn into the entrance of the Knolls Apartment complex where Tara lived. The road character at this area is a straight two lane roadway, one lane for northbound traffic and the other for southbound traffic. While stopped and waiting to turn left, Fryar had his mechanical left turn signal activated signaling his intent to turn. Defendant Kleckner was also operating a motor vehicle in a southerly direction on North Hills Drive. She was operating defendant Tucker's 1980 Fiat automobile with Tucker's permission. Defendant Kleckner saw the brake lights of Fryar's automobile but assumed they were taillights. Kleckner did not apply her brakes in time to prevent a rear end collision with Fryar's automobile in which plaintiff Tara was a passenger in the rear seat. Raleigh Police Officer Jiles Clark Smith reported to the scene of the accident and investigated the accident. Officer Smith issued defendant a citation for traveling at an excessive rate of speed.

At the close of all the evidence, the trial court denied plaintiff's request for jury instructions embodying the law pertaining to reasonable lookout and proper control and instructed the jury, *inter alia,* on the doctrine of sudden emergency. In response to the first issue, "Was the plaintiff [Tara] injured and damaged by the negligence of the defendant [Kleckner]?", the jury answered, "No [sic] Sudden Peril." Judgment was entered against plaintiffs. Plaintiffs appeal.

*Currie, Pugh & Davis, by E. Yvonne Pugh, for plaintiff appellant.*

*Bailey, Dixon, Wooten, McDonald, Fountain & Walker, by Gary S. Parsons, for defendant appellees.*

JOHNSON, Judge.

[1]   Plaintiff assigns error to the trial court's refusal to instruct the jury on the law pertaining to evidence offered by plaintiff on defendant's failure to keep a proper lookout and to keep the automobile under proper control. Plaintiff, in her brief, correctly cites *Beanblossom v. Thomas*, 266 N.C. 181, 146 S.E. 2d 36 (1966), for the following principle:

> Unless the driver of the leading vehicle is himself guilty of negligence, or unless an emergency is created by some third person or other highway hazard; *the mere fact of a collision with the vehicle ahead furnishes some evidence* that the motorist in the rear was not keeping a proper lookout or that he was following too closely.

*Id.* at 188, 146 S.E. 2d at 42 (emphasis supplied) (citations omitted). Defendants argue that the foregoing is merely dicta. We disagree. Our understanding of *Beanblossom, supra,* is that the foregoing statement of the law was necessary to the Court's holding with respect to that appellant's assignments of error relating to the jury charge in which the trial court attempted to apply the doctrine of foreseeability. *Id.* at 187, 146 S.E. 2d at 41 (citations omitted). In *Beanblossom, supra,* the Court also aptly stated the following:

> In the absence of anything which should alert him to the danger, the law does not require a motorist to anticipate specific acts of negligence on the part of another. It does, however, fix him with notice that the exigencies of traffic may, at any time, require a sudden stop by him or the motor vehicle immediately in front of him. Constant vigilance is an indispensible requisite for survival on today's highways and a motorist *must* take into account 'occasional negligence which is one of the incidents of human life.' He *must* bear in mind that every operator of a motor vehicle on the highway is constantly confronted with the possibility of a collision with other vehicles, pedestrians, or animals; that blowouts and mechanical failures, highway and weather conditions, as well as innumerable other factors, can create sudden hazards. It follows therefore, that a reasonably prudent operator will not put himself unnecessarily in a position which will absolutely preclude him from coping with an emergency.

*Id.* at 187-88, 146 S.E. 2d at 41 (emphasis supplied) (citations omitted). The evidence in the case *sub judice* was that defendant Kleckner was operating the automobile under conditions in which it was raining and the pavement was wet; that she was able to discern that she was approaching an automobile in her lane of travel; that she saw the brake lights on the automobile but mistook the brake lights for taillights and assumed that the automobile was moving, but once realizing that the automobile was in fact stopped, she slammed on her brakes too late to avoid a rear end collision. Even without the testimony of two witnesses that a left turn signal was in operation, we hold that the foregoing constitutes sufficient evidence to raise an issue of fact for a jury to determine, to wit: whether defendant was maintaining a proper lookout. Evidence that a turn signal was in operation likewise raises a question for the jury to decide after being instructed on defendant's duty to maintain a proper lookout. The trial court's refusal to properly instruct the jury on the law regarding defendant's duty to maintain a proper lookout shielded defendant from possible liability. In this there was error. Should the jury have found that defendant did not maintain a proper lookout, it would have precluded a verdict that the doctrine of sudden emergency insulated defendant from liability.

[2]   Plaintiff next assigns error to the trial court's denial of her request for an instruction to the jury on the law arising from the evidence presented of defendant's failure to maintain proper control of the automobile. This request was also improperly ruled on by the trial court. Although the case of *Redden v. Bynum*, 256 N.C. 351, 123 S.E. 2d 734 (1962), relied upon by plaintiff does provide us with some guidance, we note that the Court in *Redden* quoted the legal requirements of G.S. 20-141(c) which is no longer in effect. The Court stated the following:

> The fact that the speed of a vehicle is less than the maximum limit provided by law 'shall not relieve the driver from the duty to decrease speed . . . when special hazards exist with respect to . . . other traffic or by reason of weather conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and duty of all persons to use due care. G.S. 20-141(c). Failure to observe this statutory duty renders a

motorist negligent; and such negligence may consist of traveling at excessive speed, failure to keep a proper lookout, *or failure to maintain reasonable control of vehicle.*

*Redden, supra,* at 354, 123 S.E. 2d at 736 (emphasis supplied). The principle enunciated in *Redden, supra,* remains the same under the effective version of G.S. 20-141. There has been a refinement of the distinction between the interrelated allegations of driving at an excessive rate of speed and failure to maintain proper control. *See Radford v. Norris,* 74 N.C. App. 87, 327 S.E. 2d 620, *disc. rev. denied,* 314 N.C. 117, 332 S.E. 2d 483 (1985). The trial court in the case *sub judice,* upon plaintiff's request for a jury instruction stated "Proper control is denied. No evidence of any loss of control in this case." This Court in *Radford, supra,* stated, "Maintaining proper control means driving in such a manner that the vehicle 'can be stopped quickly or with a reasonable degree of celerity, which does not mean instantly under any and all circumstances.'" *Radford, supra,* at 91, 327 S.E. 2d at 623, *quoting* 7A Am. Jur. 2d *Automobiles and Highway Traffic* sec. 415 (1980). The evidence in the case *sub judice* showed that defendant, while operating an automobile under hazardous conditions, perceived an automobile in her lane of travel, but despite her "slamming" on the brakes she was unable to maintain control of her automobile and slid into the rear end of the automobile in front of her. We hold the evidence in the case *sub judice,* to be sufficient under *Redden, supra,* to submit the issue for determination by the jury.

[3] Plaintiff also contends the trial court committed prejudicial error in its instructions to the jury on the applicability of the doctrine of sudden emergency in the case *sub judice.* We agree.

The lawful duty required of every motorist driving upon the roads of this State is that, "A motorist is required in the exercise of due care to keep a reasonable and proper lookout in the direction of travel and is held to the duty of seeing what he ought to have seen." *Hairston v. Alexander Tank & Equip. Co.,* 310 N.C. 227, 239, 311 S.E. 2d 559, 568 (1984), *citing Wall v. Bain,* 222 N.C. 375, 23 S.E. 2d 330 (1942). The state of the law on the doctrine of sudden emergency has been thoroughly stated by our courts. "One who is required to act in an emergency is not held by the law to the wisest choice of conduct, but only to such choice as a

person of ordinary care and prudence, similarly situated would have been." *Ingle v. Cassady*, 208 N.C. 497, 499, 181 S.E. 562, 563 (1935). However, the law of sudden emergency is not without limitations.

> It is the duty of the trial court in a case allegedly involving a sudden emergency to not only instruct that a lesser standard of care is applied in an emergency situation, but also the trial court must instruct that the jury must find that in fact a sudden emergency did exist and that the jury must find that the emergency was in fact not brought on by the negligence of the defendants.

*Lawson v. Walker*, 22 N.C. App. 295, 297, 206 S.E. 2d 325, 327 (1974) (trial court's instruction to the jury held insufficient where the clear inference from the trial court's instructions was that the trial court felt that a baby falling from an automobile seat caused the sudden emergency whereby the sudden emergency was not caused by defendant). Moreover, "where a motorist discovers, or in the exercise of due care should discover, obstruction within the extreme range of his vision and can stop if he acts immediately, but his estimates of his speed, distance, and ability to stop are inaccurate and he finds stopping impossible, he cannot then claim the benefit of the sudden emergency doctrine." *Hairston, supra,* at 239, 311 S.E. 2d at 568. A broader statement of this proposition is that "one cannot escape liability for acts otherwise negligent because done under the stress of an emergency if such emergency was caused, *wholly or in material part,* by his own negligent or wrongful act." *Cockman v. Powers*, 248 N.C. 403, 407, 103 S.E. 2d 710, 713 (1958) (emphasis supplied).

The evidence in the case *sub judice* tends to show that defendant was driving at an excessive rate of speed (twenty-five miles per hour) for the *existing* conditions and subsequently pleaded guilty to that offense in District Court. Defendant described the accident as follows:

> A. I was driving up a hill and right as I got to the top of the hill I had to go around a slight curve, and as I got to the top of the hill and went around the curve I then saw a car in front of me and saw what I guess are brake lights, but I thought they were taillights at the time because everyone

else had their lights on, and by the time I realized he wasn't moving I slammed on my brakes and slid into him.

Defendant did not testify that the automobile that she rear ended did not display a left turn signal; defendant merely testified "I saw no turn signal." However, Mr. Fryar testified "I was sitting there and I had my left signal on." The minor plaintiff testified "well, we stopped. He had on his blinker light. I know that because you can hear it, you could hear the blinker lights." Officer Smith testified that he spoke with defendant Kleckner immediately after the accident and "she just didn't see the vehicle when she realized that Mr. Fryar's vehicle was stopped, she put on her brakes but because of the wet pavement she was unable to stop, and slid into the rear of his vehicle." All the evidence presented in the case *sub judice* established that at the time of the accident the existing driving conditions were rain and wet pavement. There was no evidence of any nature about a sudden downpour or sudden change of driving conditions. Defendant's testimony and statements made to Officer Smith were such that a jury could infer that she made an error in judgment and, as discussed *supra*, she did not keep a proper lookout or maintain proper control of the automobile she was operating. This alleged emergency was not sudden and the rear end collision was caused at least in material part due to defendant's disregard of the *existing* conditions and mistaken assumption that Mr. Fryar's automobile was moving even though defendant testified that at least she saw the brake lights on the automobile ahead of her. Defendant may not escape liability by the court instructing the jury on the applicability of the doctrine of sudden emergency. *Cockman, supra.* The trial court erred by instructing the jury on the applicability of the doctrine of sudden emergency when the evidence did not support said instruction and plaintiff is entitled to a new trial. *Hairston, supra; Hoke v. Greyhound Corp.*, 227 N.C. 412, 42 S.E. 2d 593 (1947); *Bryant v. Winkler*, 16 N.C. App. 612, 192 S.E. 2d 686 (1972); *Johnson v. Simmons*, 10 N.C. App. 113, 177 S.E. 2d 721 (1970), *cert. denied*, 277 N.C. 726, 178 S.E. 2d 832 (1971).

For the aforementioned reasons plaintiff is entitled to a

New trial.

Judges WEBB and WHICHARD concur.